IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL SNYDER, et al. | ) | |
| | ) | |
| v. | ) | No: 07-CV-_____ |
| | ) | |
| BLUE MOUNTAIN SCHOOL | ) | |
| DISTRICT, et al., | ) | |
| | ) | **ELECTRONICALLY FILED** |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

i

Dockets.Justia.com

# TABLE OF CONTENTS

Table of Authorities.................................................................................. iii

Introduction .............................................................................................1

Procedural History....................................................................................1

Statement of Facts ...................................................................................1

Questions Presented .................................................................................5

Argument..................................................................................................6

A. In the Absence of Immediate Injunctive Relief, Jill and Her Parents Will
    Suffer Irreparable Harm......................................................................6

1. Defendants' Interference With Jill's Education is Causing Plaintiff Irreparable
    Harm ...................................................................................................6

2. Defendants' Interference With The Snyders' Parental Authority Is Causing
    Plaintiffs Irreparable Harm ................................................................8

B. Plaintiffs are Likely To Prevail On Their Claims.................................8

1. Plaintiffs are Likely To Prevail On The Merits Of Their First Amendment
    Claim..................................................................................................8

a. The Burden of Proof and Persuasion With Respect To Plaintiffs' First
    Amendment Claims Is On The Defendants .......................................8

b. School Officials Cannot Punish Students for Constitutionally Protected Speech
    Posted on the Internet from Home Computers Unless They Can, at a
    Minimum, Demonstrate That it Caused a Substantial and Material
    Disruption in the School ...................................................................9

2. Plaintiffs are Likely To Prevail On The Merits of Their Fourteenth
    Amendment and Ultra Vires Claims Because School Officials Cannot
    Punish Jill for Either Expressive Or Non-Expressive Conduct That Occurs
    At Home And Does Not Cause a Substantial and Material Disruption in
    the School...........................................................................................14

3. The Inclusion of Defendant McGonigle's Picture From The School Website
    Does Not Change The Analysis .........................................................17

C. Defendants Will Suffer No Irreparable Harm By Reinstating Jill's Academic
    Schedule .............................................................................................22

D. The Public Interest Is In Respecting Students' Constitutional Rights................22

Conclusion..............................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union v. Reno*, 217 F.3d 162 (3d Cir. 2000) ............................................. 6, 7
*Bethel School District v. Fraser*, 478 U.S. 675 (1986) ............................................................ 10, 12
*Bystrom v. Fridley High School*, 822 F.2d 747 (8th Cir. 1987) ................................................... 15
*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...................................................... 19, 20
*D.O.F. v. Lewisburg Area School District,* 868 A.2d 28 (Pa. Commw. Ct. 2004) ....................... 16, 18
*Elliot v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ..................................................................... 6
*Elrod v. Burns*, 427 U.S. 347 (1976)....................................................................................... 7
*Flaherty v. Keystone Oaks Sch. Dist.*, 247 F.Supp.2d 698 (W.D.Pa. 2003) .............................. 12
*Franz v. United States,* 707 U.S. 347 (1976)…………………………………………………… 8
*Ginsberg v. New York*, 390 U.S. 629 (1968)............................................................................ 15
*Hodgkins v. Peterson*, No. 1:04-cv-569-JDT-TAB, 2004 WL 1854194, (S.D. Ind. July 23, 2004)...... 8
*Hoke v. Elizabethtown Area School District*, 833 A.2d 304 (Pa. Commw. Ct. 2003).................. 16, 17
*Hoke v. Elizabethtown Area School District*, 847 A.2d 59 (Pa. 2004) ....................................... 16
*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) .................................................................... 10
*Killion v. Franklin Regional Sch. Dist.*, 136 F. Supp. 2d 446 (W.D. Pa. 2001) ........................ 11, 12
*Klein v. Smith*, 635 F. Supp. 1440 (D. Me. 1986) ................................................................... 18
*Latour v. Riverside Beaver School District,* Civ. A. 05-1076, WL 2106562 (W.D.Pa. August 24, 2005)................................................................................................................................. 12
*Layshock v. Hermitage School Dist.*, No. 2:06-CV-116, 2006 WL 909432 (W.D. Pa. Apr. 07, 2006) .................................................................................................................................. 15
*Layshock v. Hermitage School District,* 412 F. Supp. 2d 502 (W.D. Pa. 2006) .......................... 13, 16
*Meyer v. Nebraska*, 262 U.S. 390 (1923)................................................................................. 15
*Miller v. Solanco School District*, No. CI-03-11435, slip op. (Lancaster Co. Ct. Com. Pl., Jan. 27, 2004)................................................................................................................................. 18
*Minnicks v. McKeesport Area School District*, 74 Pa. D. & C.2d 744 (Allegheny Co. Com. Pl. 1975) 7
*Oravetz v. West Allegheny School District*, 74 Pa. D. & C.2d 733 (Allegheny Co. Com. Pl. 1975) ..... 7
*Parham v. J.R.*, 442 U.S. 584 (1979) ...................................................................................... 15
*Phillips v. Borough of Keyport*, 107 F.3d 164 (3d Cir. 1997)..................................................... 9
*Pierce v. Society of Sisters*, 268 U.S. 510 (1925)...................................................................... 15
*Prince v. Massachusetts*, 321 U.S. 158 (1944) ........................................................................ 15
*Shanley v. Northeast Independent School District*, 462 F.2d 960 (5th Cir. 1972)......................... 15
*Sypniewski v. Warren Hills Regional Board of Educ.*, 307 F.3d 243 (3d Cir. 2002).......................... 14
*Temple University v. White*, 941 F.2d 201 (3d Cir. 1991)........................................................... 6
*Thomas v. Board of Education, Granville Central School District*, 607 F.2d 1043 (2d Cir. 1979) .... 15
*Tinker v. Des Moines Ind. Sch. Dist.*, 393 U.S. 503 (1969) ...................................................... 9, 14
*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ................................. 8
*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) ...................................................... 21

**Statutes**

17 U.S.C. §107 ....................................................................................................................... 19
24 P.S. § 5-510 ...................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 65 .................................................................................................................... 6

## I.  INTRODUCTION

Jill Snyder, an eighth grader at Blue Mountain Middle School in Orwigsburg, Pennsylvania, seek a temporary restraining order directing Jill's immediate return to her classes.  Jill has been given a ten-day suspension by Defendants in retaliation for her posting on the Internet, from her home computer, a parody profile of Defendant McGonigle.  Jill and her parents will be irreparably harmed in the absence of immediate injunctive relief, while the Defendants will suffer no harm from returning Jill to her classes during the pendency of this litigation.

## II. PROCEDURAL HISTORY

This action was commenced by Verified Complaint filed March 28, 2007.

## III.  STATEMENT OF FACTS

Jill Snyder is an eighth grader at Blue Mountain Middle School, where Defendant McGonigle is principal.  On or about Sunday, March 18, 2007, Jill and a fellow eighth grader created a parody profile of Defendant McGonigle on a website called "MySpace.com" (www.myspace.com).  The profile did not identify Defendant McGonigle by name.  It did, however, include a picture of Defendant McGonigle, which the other student had copied off the Blue Mountain School District website.  The photo can be copied from the website by simply placing a

cursor over the picture and "right clicking" to bring up a menu of options regarding the image.

The profile was intended to be a parody of Defendant McGonigle, and would be perceived as such by any reasonable person. A few hours after they had created it, the girls made the profile into a "private" profile, meaning that it could not be viewed unless one asked the owner of the profile (in this case, Jill and her friend) for permission to access the profile.

To the best of Jill's recollection, the profile described the subject as a married man living in Alabama with his wife and child, and identified him as bisexual. It listed as his interests: detention, "being an ass", "being a principal", baseball, "my gold pen", "my wife (who looks like a man)" and "my kid (who looks like a gorilla)". The profile also featured a "personal statement," in which the subject described himself as "expressionless", a "sex addict", "dick-faced" and as having a "small dick". It suggested that the subject was preoccupied with sex, and insulted his wife and child. The profile was located at the URL www.MySpace.com/kidsrockmybed. The profile contained no "true threats" or obscenity, as those terms are defined in the law. Nothing on the site could reasonably be construed as threatening or violent.

According to Defendant McGonigle, the photograph used by the girls to

create the profile is not property of the school, but is owned by the photographer, and that the District has a license to use the photo on its website.

Jill never brought to school a printout of the profile, nor did she ever download it on a school computer. In fact, the school computers that are accessible to students block access to MySpace.com, so no student ever viewed the profile from school. Jill did tell some of her friends about the profile, and some students discussed the profile during lunch and between classes. But there was no disruption of classes or otherwise in the school as a result of the posting of the profile, which was up for less than a week.

At the beginning of the school day on Thursday, March 22, Jill was summoned to a meeting with Defendant McGonigle and Mrs. Guers, a guidance counselor, to discuss the profile. Jill immediately admitted that she had helped create the profile. Jill's friend was then summoned to the meeting, as well. Defendant McGonigle told the students that he was very angry about the profile, and particularly about the involvement of his family. He stated that he would sue the students and their families. Defendant McGonigle concluded by telling the guidance counselor to remove the girls "before I lose my temper". Jill and her friend were then locked in separate rooms to await the arrival of their parents.

When Ms. Snyder arrived to meet with Defendant McGonigle, he

removed a key from his pocket and unlocked the room where Jill had been waiting, then took Jill and her mother into his office. He showed Ms. Snyder the profile, then told Ms. Snyder that he planned to file a police report and sue the family. He also announced that Jill would receive a ten-day out-of-school suspension, which is the longest period that a student may be suspended without being expelled. He also stated that she would not be permitted to attend school dances for the rest of the term and that she probably would not be permitted to join the eighth grade field trip to Washington, D.C. at the end of the term.

When he had finished, he asked Ms. Snyder if she had any questions, then berated her for not apologizing to him immediately. Ms. Snyder did apologize. Jill also apologized to Defendant McGonigle and, when he offered her the opportunity, to his wife. After her suspension, Jill prepared a written apology to Defendant McGonigle, which was delivered to Defendant McGonigle on March 26. The Snyders have punished Jill for her conduct by grounding her and restricting her telephone and computer privileges.

On March 24, the Snyders received a letter from the school along with a Disciplinary Notice (attached to the Verified Complaint). The letter and notice confirmed the ten-day suspension. Neither the notice nor the letter identified any school rule Jill was supposed to have broken. Instead, each stated that she was

being suspended for "making false accusations" against Defendant McGonigle and "copyright laws". The Notice stated that Jill had committed a "Level 4" infraction, the highest level of misconduct under the Blue Mountain School District rules. Other Level IV infractions include aggravated battery, arson, assault, battery, breaking and entering, use of firearms or explosives, grand larceny, homicide, and kidnapping.

Furthermore, Defendant McGonigle informed all of the Blue Mountain Middle School teachers of Jill's suspension, despite the fact that Blue Mountain is required by federal law to keep Jill's disciplinary records confidential. Also upon information and belief, certain teachers at the Middle School thereafter told their classes about the incident and the punishment, again despite the fact that such information is private.

## IV. QUESTIONS PRESENTED

This First Amendment free-speech case presents two issues: (1) whether the First Amendment permits a school district to exclude a student from classes for non-obscene and non-threatening speech posted on the Internet from her home computer; and (2) whether the Fourteenth Amendment and Pennsylvania law permit a school district to discipline a student for out-of-school conduct that does not cause a disruption of classes or school administration.

## V.  ARGUMENT

Under Fed. R. Civ. P. 65, this Court must weigh four factors when deciding whether to grant a motion for preliminary injunction: (1) has the movant shown a reasonable probability of success on the merits; (2) will the movant be irreparably harmed by denial of the relief; (3) will granting preliminary relief result in even greater harm to the non-moving party; and (4) is granting preliminary relief in the public interest. *American Civil Liberties Union v. Reno*, 217 F.3d 162, 172 (3d Cir. 2000) (citations omitted). Balancing the factors in this free-speech case, where irreparable harm is legally presumed, clearly weighs in favor of granting the requested injunction.

This being a non-commercial case involving a relatively small amount of money, and the balance of hardships favoring the Plaintiffs, the Fed. R. Civ. P. 65(c) security bond requirement should be waived. *Elliot v. Kiesewetter*, 98 F.3d 47, 59-60 (3d Cir. 1996); *Temple University v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991).

### A.     In The Absence Of Immediate Injunctive Relief, Jill And Her Parents Will Suffer Irreparable Harm

#### 1.     Defendants' Interference with Jill's Education is Causing Plaintiff Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). *See also American Civil Liberties Union*, 217 F.3d at 180 (generally in First Amendment challenges Plaintiffs who meet the merits prong of the test for a preliminary injunction "will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights.") (internal citation omitted).

In this case, however, Plaintiffs need not stand just on legally presumed harm. The injury being inflicted by defendants on Jill is serious and irreparable because she is being deprived of educational time that she literally cannot regain or replace. "Absence from school cannot be repaired by money damages or even by a subsequent reinstatement at a future period." *Minnicks v. McKeesport Area School Dist.*, 74 Pa. D. & C.2d 744, 749-50 (Allegheny Com. Pl. 1975). Moreover, "deprivation of educational rights can produce irreparable harm and establishes a need for prompt and immediate relief." *Oravetz v. West Allegheny School Dist.*, 74 Pa. D. & C.2d 733, 737-38 (Allegheny Com. Pl. 1975).

Absent immediate injunctive relief, Jill will continue to suffer irreparable harm. The seriousness of this harm alone warrants the injunction absent a compelling reason by the District as to why Jill should not immediately be reinstated to her classes pending further proceedings in this case.

### 2. Defendants' Interference with the Snyders' Parental Authority is Causing Plaintiffs Irreparable Harm

The District's ongoing interference with the Snyders' parental right to direct the upbringing and discipline of their children also inflicts irreparable harm that justifies issuance of preliminary injunctive relief. *See Franz v. United States*, 707 F.2d 582, 608 (D.C. Cir. 1983) (holding that interference with parent-child relationship threatens irreparable harm); *see also id.,* 707 F.2d at 596 ("It is beyond dispute that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Constitution…. It emerges in a parent's right to control the manner in which his child is reared and educated."); *Hodgkins v. Peterson*, No. 1:04-cv-569-JDT-TAB, 2004 WL 1854194 (S.D. Ind. July 23, 2004) (granting preliminary injunction against curfew law because it "violates the fundamental due process right of parents to make decisions about their children's upbringing without undue interference by the state").

### B. Plaintiffs are likely to Prevail On Their Claims

### 1. Plaintiffs Are Likely to Prevail on the Merits of Their First Amendment Claim

### a. *The Burden of Proof And Persuasion With Respect To Plaintiffs' First Amendment Claims Is on The Defendants.*

At the outset, Plaintiffs note that unlike most legal disputes, in First Amendment cases *Defendants* carry the burden of proof and persuasion. *United*

*States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816, (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions") (citations omitted); *Phillips v. Borough of Keyport*, 107 F.3d 164, 172-73 (3[d] Cir. 1997)(en banc) (accord). In *Tinker v. Des Moines Ind. Sch. Dist*, the Supreme Court affirmed this burden shifting proposition for challenges to regulations of student expression in the school context. 393 U.S. 503, 509 (1969). In other words, once Plaintiffs have shown a restraint on free expression, the burden shifts to the government agency to justify the restraint under the relevant First Amendment standard.

>  **b.** **School Officials Cannot Punish Students for Constitutionally Protected Speech Posted on the Internet from Home Computers Unless They Can, at a Minimum, Demonstrate That it Caused a Substantial and Material Disruption in the School.**

School officials' authority to punish out-of-school speech, displayed on the Internet, is extremely limited. Either the speech must be unprotected, such as obscenity or true threats, or if it is protected, officials must, at a minimum, demonstrate that the speech caused a "substantial and material disruption" in the school, the standard set by the Supreme Court in *Tinker v. Des Moines Ind. Sch. District*. *Tinker*, 393 U.S. at 509.

The fact that Mr. McGonigle was offended, felt disrespected or was demeaned by the parody profile cannot justify punishing Jill. While it may be that at least portions of the profile would have triggered school disciplinary authority if the conduct had occurred in school, *see, e.g., Bethel School District v. Fraser*, 478 U.S. 675 (1986) (schools have latitude to regulate "vulgar and lewd speech" inside the school), that simply is not the case when the expression takes place outside the school or a school-sponsored activity.

Jill's parody of Mr. McGonigle is constitutionally protected speech. Although defendants have thus far been unwilling to release to Plaintiffs the only known printout of the site, based on Jill's description and the school's disciplinary notices, it appears to be parody similar to – but far tamer than – that at issue in *Hustler Magazine v. Falwell,* where the Court held that parody of public figures and public officials is speech protected by the First Amendment. *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988). Hustler Magazine published a parody "interview" with Reverend Jerry Falwell in which he stated that his "first time" (having sex) was during an incestuous rendezvous with his mother in an outhouse. *Id.* at 48. The Hustler parody interview portrayed Falwell and his mother as drunk and immoral, and suggested that he was a hypocrite who preached only when drunk. *Id.* Falwell won a verdict in the district court, which was affirmed by the Fourth Circuit. The

Supreme Court reversed, holding that even speech that is "patently offensive and is intended to inflict emotional injury" is subject to First Amendment protection. *Id.* at 50. The Court, following long-standing law, reasoned that the First Amendment protects, and must protect, robust political debate about public office holders. *Id.* at 51.

Jill's parody profile of Defendant McGonigle may well have been offensive, and it could have inflicted emotional distress, but it is nonetheless protected by the First Amendment. Therefore, unless the school can show that Jill's profile caused substantial and material disruption in the school – something the school has never even argued – any punishment or retaliation for that speech violates the First Amendment.

Four recent Pennsylvania District Court cases illustrate this principle. In *Killion v. Franklin Regional School Dist.*, 136 F. Supp. 2d 446 (W.D. Pa. 2001), Chief Judge Ziegler expressly held that when out-of-school speech is involved, the school district must, at minimum, satisfy the *Tinker* standard. *Killion* involved facts similar to this one. The student circulated e-mails with a David-Letterman-type Top-Ten list making fun of the athletic director's size. School officials were offended by the list and suspended the student and removed him from the track team. Judge Ziegler held that the school violated the student's First Amendment

rights.  136 F. Supp. 2d at 455.  Importantly, the *Killion* court concluded that when off-campus speech is involved, the school district cannot rely on *Bethel School District v. Fraser*, 478 U.S. 675 (1986), which permits a school to punish a student for lewd, vulgar or profane speech uttered on campus, but must satisfy *Tinker's* higher standard.  136 F. Supp. 2d at 456-458.

In *Flaherty v. Keystone Oaks Sch. Dist.*, Chief Judge Ambrose enjoined the school's disciplinary action against a student who posted, from his home computer, crude and profane comments on a website, including some about a district art teacher.  247 F.Supp.2d 698 (W.D. Pa. 2003). The court subsequently held facially unconstitutional the school district's disciplinary policies because they did not sufficiently limit the school's authority over out-of-school-student speech.  *Id*., 247 F. Supp. 2d at 704.

In *Latour v. Riverside Beaver School District,* Civ. A. 05-1076, WL 2106562 (W.D. Pa. August 24, 2005), Chief Judge Ambrose again enjoined a student's expulsion involving Internet speech posted from a home computer.  In *Latour*, the student had posted graphically violent and even threatening rap-music lyrics on the Internet.  The school expelled the student for two years because they said he threatened violence against other students and even sang about shooting up a school.  Chief Judge Ambrose held that even though violent, the speech did not rise

to the level of true threats and was, thus, constitutionally protected. Since the school could not prove that the speech had caused substantial disruption in the school, she ruled the expulsion was a violation of the student's right and ordered him reinstated forthwith.

The different result in *Layshock v. Hermitage School District,* 412 F. Supp. 2d 502 (W.D. Pa. 2006), further underscores the importance of the *Tinker* standard in this analysis. In *Layshock*, as here, the student created a parody profile of his principal and posted it on MySpace.com. Unlike in this case, however, the school district was able to show that the parody resulted in a "substantial disruption" because the school computers had to be shut down for six days to prevent students from viewing the profile, which resulted in the cancellation of several classes. 412 F. Supp. 2d at 508. In addition, several school staff had to devote a substantial amount of time to fixing the computers and investigating the multiple parodies accessed on school computers. *Id.* In *Layshock,* although the parody was created at home, the impact of the website was far-reaching at school.

Jill Snyder's case involves no threatening speech, and no disruption of the school. It is much closer to *Killion's* mocking of the athletic director's size, or even the demeaning statements about an art teacher in *Flaherty*. While undoubtedly upsetting, Defendant McGonigle's and the school district's recourse is to discuss the

matter with Jill, which they did and Jill apologized. What they may not do is use school authority to punish Jill for the out-of-school speech poking fun at the principal.

The standard, under both Supreme Court and Third Circuit cases, for showing that a disruption is "substantial and material" is very high. "[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker*, 393 U.S. at 508. Instead, a school district must be able to point to a *particularized reason* as to why it anticipates substantial disruption resulting from the speech it intends to prohibit or punish. *Id.* According to a recent Third Circuit decision, "*Tinker* requires a specific and significant fear of disruption, not just some remote apprehension of disturbance." *Sypniewski v. Warren Hills Regional Board of Educ.*, 307 F.3d 243, 253 (3d Cir. 2002). Defendants thus far have not, and Plaintiffs believe that Defendants cannot, satisfy this high burden.

> **2. Plaintiffs Are Likely to Prevail on the Merits of Their Fourteenth Amendment And Ultra Vires Claims Because School Officials Cannot Punish Jill For Either Expressive or Non-Expressive Conduct That Occurs At Home And Does Not Cause a Substantial and Material Disruption *in the School*.**

When a school seeks to reach off campus to enforce its view of what constitutes good behavior, rather than acting to protect the educational process, the

school infringes on the parents' authority to direct the upbringing and discipline of their children. *See Layshock v. Hermitage School Dist.*, No. 2:06-CV-116, 2006 WL 909432 (W.D. Pa. Apr 07, 2006) (denying motion to dismiss parents' claim that school discipline of out-of school conduct infringed on their constitutional rights).[1] The right of parents to control their children's upbringing and discipline is solidly established in Supreme Court precedent. *See, e.g., Parham v. J.R.*, 442 U.S. 584, 602-04 (1979); *Ginsberg v. New York*, 390 U.S. 629, 639 (1968); *Prince v. Massachusetts*, 321 U.S. 158, 165-66 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923)) (other internal quotes and citations omitted).

Pennsylvania law is consistent with this principle. Under Pennsylvania statute, school districts only have the authority to punish students "during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school." 24 P.S. § 5-510. The Commonwealth Court of Pennsylvania has interpreted this

---

[1] Numerous cases from other jurisdictions confirm this principle. *See, e.g.*, *Bystrom v. Fridley High School*, 822 F.2d 747, 750 (8th Cir. 1987); *Thomas v. Board of Education, Granville Central School District,* 607 F.2d 1043, 1046 (2d Cir. 1979); *Shanley v. Northeast Independent School District*, 462 F.2d 960 (5th Cir. 1972).

statute to mean that school districts do <u>not</u> have the authority to discipline students in cases involving purely off-grounds, outside-school-hours activities. *See Hoke v. Elizabethtown Area School District,* 833 A.2d 304 (Pa. Commw. Ct. 2003), *appeal denied,* 847 A.2d 59 (Pa. 2004); *and see D.O.F. v. Lewisburg Area School District,* 868 A.2d 28 (Pa. Commw. Ct. 2004). In *D.O.F.*, the Court relied on *Hoke* and 24 P.S. § 5-510 to find that a student smoking marijuana on a school playground at night was not under the supervision of the school district and therefore could not be punished by the school district for his misconduct. 868 A.2d at 35-36.

It is simply beyond the power of a school district to punish student conduct that occurs off school grounds and/or outside of school hours absent a substantial impact on the school program. *See, e.g., D.O.F.,* 868 A.2d at 28; *see also Layshock,* 412 F.Supp.2d at 502 (discussed above).

As in *D.O.F.* and *Hoke*, Jill was not under the supervision of the school district when she created a MySpace page at home on a Sunday. Therefore, as in *D.O.F.* and *Hoke*, the District does not have the jurisdiction to discipline her for the creation of the MySpace parody. Unlike the situation in *Layshock,* in this case there was no substantial disruption of the school day as a result of the parody; the entire MySpace site was already blocked on Blue Mountain Middle School computers. Other students viewed the parody from their home computers at night or on the

weekend.  No students viewed the parody at school.

When school districts, such as Blue Mountain, act outside their statutory authority (namely 24 PS § 5-510), courts should intervene.  *Hoke*, 833 A.2d at 313 (stating "[a] mandatory preliminary injunction interfering with a school board's discretion is proper where the action is based on a misconception of the law") (citation omitted).


### 3. The Inclusion Of Defendant McGonigle's Picture from the School Website Does Not Change The Analysis.

Defendants have argued that they may discipline Jill for the parody profile because the girls included a copy of Defendant McGonigle's picture, which they copied from the District website.  Defendants contend that the use of the photo is theft of school property or a violation of the copyright laws and therefore is subject to discipline, regardless of any First Amendment protections for the profile itself.

The use of the photograph does not, in fact, somehow sweep away all constitutional protection for the profile.  The first reason for this is that the evidence will show that the Defendants' claims regarding the photo are a convenient excuse.  The sole reason for discipline in this case is that Defendants found the profile insulting and offensive.

More importantly, however, the use of the photo cannot justify the discipline because the District is still attempting to punish conduct that occurred off school grounds, outside the authority of the District, and that violates the Fourteenth Amendment and Pennsylvania law.  A school may discipline out-of-school conduct that involves school property only where the conduct also causes a substantial and material disruption of school.  *Compare D.O.F.,* 868 A.2d at 32 (District could not punish student for after school drug use on school property) with *Miller v. Solanco School District*, No. CI-03-11435, slip op. at 5, 7-8 (Lancaster Co. Ct. C. P., Jan. 27, 2004) (attached) (school could discipline student for after-school theft and abandonment of school bus because the theft resulted in the school bus being out of commission for several days, resulting in severe disruption to the school's operation).

Moreover, even if the District could punish off-campus use of its property, it does not appear that the photo *is* District property.  Defendant McGonigle has stated that the photo is used by permission of the photographer.  That means that the photographer, and not the District, is the owner and the District is merely a licensee.  Therefore, the District has no property interest in the photo and no standing to object to its use.  If the use of the photo had been a crime or violation of the

copyright laws, as the Defendants claim, that would be a matter for the owner of the

photo – the photographer – to prosecute, not for the school to punish.

In fact, however, the girls' use of the photo does not violate the copyright

laws, regardless who owns it. Pursuant to section 107 of the U.S. Copyright Act,

"the fair use of a copyrighted work . . . for purposes such as criticism, comment,

news reporting, teaching . . . scholarship, or research, is not an infringement of

copyright." 17 U.S.C. §107. While the statute does not specifically define such a

"fair use," a number of factors that should be considered in the determination are

listed, namely:

> (1) the purpose and character of the use;
> (2) the nature of the copyrighted work;
> (3) the amount of the work used; and
> (4) the effect of the use on the potential market for or value of the
> copyrighted work.

*Id. See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-90 (1994).

Focusing on the two most critical factors in the fair use analysis, namely

factors (1) and (4) listed above, the girls' use of the photograph of Defendant

McGonigle constitutes a fair use of any copyright rights that either the District or

the photographer may have in that photo.

As for the first factor, it is important that the parody profile falls within the

types of works listed in the preamble of section 107 itself, in that the profile uses

the photograph solely in the context of <u>criticism and comment</u>. See 17 U.S.C. §107. *See, also, Campbell*, 510 U.S. at 580 (noting that the inquiry into purpose and character of use is guided, in part, by the examples given in the preamble to section 107).

Furthermore, the girls did not just reproduce the photograph by itself. Rather, they incorporated it into a larger project, the parody profile. This distinction between a mere reproduction and the creation of a new, transformative work is of critical significance. *Campbell*, 510 U.S. at 580. By using the photograph as part of an overall comment on the character of Defendant McGonigle, the girls added significant new expression to the photo, altering the original to such an extent that the new work is clearly transformative, and therefore not an infringing use.

The fourth fair use factor, relating to the effect of the use on the market for the original, also weighs heavily in favor of a finding of fair use. The parody profile does not make any attempt to replace or diminish the original photograph in the marketplace. Neither Jill nor her friend is a photographer, and they were not selling photographs of Defendant McGonigle (or of anyone else) in competition with the photographer. The use of the photograph in connection with a social

critique could have no more than a *de minimis* effect, if any at all, on the market for the original photograph.

This lack of economic harm to the copyright owner must be weighed against the public's interest in having access to copyrighted works for social commentary and criticism. In *Wright v. Warner Books, Inc.*, the Court stated that the analysis of the fourth factor requires a court to balance several competing interests, namely "'the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied.'" 953 F.2d 731, 739 (2[d] Cir. 1991) (internal citations omitted).

Although not sophisticated, the girls' parody profile was a criticism of a public official, similar – for First Amendment purposes – to the Hustler parody of Reverend Falwell. That type of speech – even when offensive and mean-spirited – is protected by the First Amendment specifically because it is part of our long-standing commitment to open discussion and criticism of public officials. In the absence of any economic harm to the copyright holder, that use cannot be prohibited.

**C.**     **Defendants Will Suffer No Irreparable Harm by Reinstating Jill's Academic Schedule.**

This Court must balance the ongoing irreparable harm to the Plaintiffs against any harm that Defendants would suffer if Jill were returned to her classes pending the outcome of the litigation. In this case, the Defendants' side of that scale is empty. There is absolutely no evidence that Jill poses a threat of violence or harm to anyone, nor even of disruption to the school's operations. And the Defendants have no legally-cognizable interest in suppressing constitutionally-protected free speech, nor in exceeding their authority to discipline student conduct, nor in intruding upon the Snyders' parental authority. Consequently, the District would suffer no harm by reinstating Jill to her classes pending the outcome of this litigation.

**D. The Public Interest is in Respecting Students' Constitutional Rights**

Similarly, the Court must weigh the effect on the public of Jill's return to class pending the outcome of the litigation. The public's interest is in respect for the First Amendment and parental authority. There is no public interest in promoting overreaching by the government. To the extent the public has any interest in discouraging Jill's behavior, she is being punished, as is appropriate, by her parents. In the absence of any threat to the orderly functioning of the schools

that would be caused by Jill's return to class, the requested injunctive relief should be granted.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court issue the requested injunction.

Respectfully submitted,

Date: March 28, 2007.

*/s/ Mary Catherine Roper*
Mary Catherine Roper
Attorney ID 71107
AMERICAN CIVIL LIBERTIES FOUNDATION
OF PENNSYLVANIA
P.O. Box 40008
Philadelphia, PA 19106
(T) 215.592.1513 ext. 116
(F) 215.592-1343
mroper@aclupa.org

Deborah Gordon
Attorney No. 95071
EDUCATION LAW CENTER-PA
1315 Walnut St., Suite 400
Philadelphia, PA 19107
(T) (215) 238-6970, ext. 313
(F) (215) 772-3125
dgordon@elc-pa.org
Attorneys for Plaintiffs

Certificate of Compliance With LR 7.8(b)(2)

I certify that the body of this brief, excluding signature blocks, certifications, tables and caption, contains 4892 words.

<u>/s/      *Mary Catherine Roper*</u>
MARY CATHERINE ROPER

## CERTIFICATE OF SERVICE

      I, Mary Catherine Roper, hereby certify that on this 28th day of March, 2007, I delivered a copy of the foregoing <u>Motion for Temporary Restraining Order and/or Preliminary Injunction</u>, along with the <u>Memorandum</u> in support thereof and the <u>Verified Complaint</u>, to counsel for defendants by facsimile:

                Ellis Katz, Esq.
                Sweet, Stevens, Katz & Williams LLP
                331 E. Butler Ave.
                New Britain, PA 18901
                Phone: (215) 345-9111
                Fax: (215) 348-1147

                        */s/ Mary Catherine Roper*
                        Mary Catherine Roper