## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.S., et al. | ) |
| | ) |
| v. | ) No: 3:07-cv-585 |
| | ) |
| BLUE MOUNTAIN SCHOOL | ) |
| DISTRICT, et al., | ) |
| | ) **ELECTRONICALLY FILED** |
| _____ | ) |

## PLAINTIFFS ANSWER TO DEFENDANTS STATEMENT OF
## UNCONTESTED FACTS

Plaintiffs J.S., by and through her parents, Terry Snyder and Steven Snyder,

by and through their counsel, hereby Answer Defendants Statement of Uncontested

Facts:

   1.    Admitted.

   2.    Admitted.

   3.    Admitted.

   4.    Admitted.

   5.    Admitted.

   6.    Admitted.

   7.    Admitted.

   8.    Admitted.

   9.    Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted in part and denied in part. It is admitted that K.L. "cop[ied] and past[ed]" McGonigle's official school picture, which was on the District website, onto the MySpace profile. It is denied that K.L.'s involvement was limited to copying and pasting of the picture. On the contrary, J.S. testified that she and K.L. were discussing and creating the proposed content of the MySpace profile over AIM on Sunday March 18, 2007. (J.S. Dep. 14) ("Q. Could she [K.L.] see what you were doing? A. We would send back and forth what we were putting down.").

14.     Admitted.

15.     Denied. J.S. testified that she and K.L. were discussing and creating the proposed content of the MySpace profile over AIM on Sunday March 18, 2007. (J.S. Dep. 14) ("Q. Could she [K.L.] see what you were doing? A. We would send back and forth what we were putting down.").

16.     Admitted.

17.     Admitted in part and denied in part. Individuals viewing MySpace could find the profile of McGonigle only if they knew the URL (Internet address) or by searching for characteristics identified in the profile. It is

denied that individuals viewing MySpace could find the profile of McGonigle by searching his name or by searching for Blue Mountain Middle School. Indeed, McGonigle testified that he could not find it when he made the attempt.

18.     Admitted.

19.     Admitted.

20.     Denied. The entire profile is nonsensical and farcical on its face.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted in part and denied in part. It is admitted only that by setting the website to "private," access to the body of the website is limited to "friends," which limits who can view the contents of the website. By way of further response, J.S. testified that when the profile was set to private, non-"friends" could view McGonigle's picture, and the information set forth in the profile regarding where "he is from" and "how old he is." (Def.'s Ex. G p. 15).; (J.S. Dep. 73) ("They can tell the URL, but they would only be able to see that box with the picture. And then they would have to send a friend request to be able to look at the whole profile.").

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     Admitted in part and denied in part.  Ms. Werner did approach

McGonigle about students talking to her during the week, but Mr.

Numemacher, another teacher, heard students talking about the profile

during his second period eighth grade Algebra I class on Thursday, March

22, after J.S. and K.L. had already been called to Mr. McGonigle's office. [1]

(Nunemacher Dep. 9).  Mr. Nunemacher approximated that six or seven

students were involved in the discussion.  (Nunemacher Dep. 16).

---

[1]     Mr. McGonigle testified that Mr. Nunemacher approached him on Tuesday March 20, 2007 regarding the conversations in his eighth grade math class about the MySpace profile.  (McGonigle Dep. 39-40).  Mr. Nunemacher testified that the discussions in his eighth grade math class occurred on the day that J.S. was suspended, Thursday March 22, 2007. (Nunemacher, Dep. 9).

36.     Admitted.

37.     Admitted in part. It is admitted that McGonigle was provided a

printout of the website by another student during the morning of March 21,

2007 in response to McGonigle's request that she bring him a copy of the

printout. (McGonigle Dep. 34-35).

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     Admitted in part and denied in part. It is admitted that McGonigle

determined that J.S. violated the school discipline on the basis that the

MySpace profile contained "false accusations" against District staff. McGonigle testified that while initially he characterized the statements in the MySpace profile as false accusations, he later stated that "they weren't accusing me. They were pretending they were me." (McGonigle Dep. 60). McGonigle did not, however, suspend J.S. for violating the computer use policy, but for violating "copyright laws". Def. Exhibits H and I.

52.     Admitted.

53.     Admitted in part and denied in part. It is admitted that Ms. Morgan, the Director of Technology for the District and the individual that is in charge of overseeing the Acceptable Use Policy, also determined that the MySpace profile of McGonigle violated the District's Acceptable Use Policy. Ms. Morgan testified that she found the MySpace profile violated Section III of the AUP because it "violat[ed] copyright law including but not limited to the making of unauthorized copies of copyright material which includes graphic images." (Schneider-Morgan Dep. 12). The AUP Policy also provides that "Federal laws, cases and guidelines pertaining to copyright will govern the use of material accessed through the school district resources." AUP Policy, at p. 15 (Appendix of Exhibits – Exhibit K).

54.     Admitted in part. It is admitted that McGonigle prepared a letter to the parents of J.S. indicating that she had been given a ten day out of school

suspension. Exhibit H. It is further admitted that the letter provided in part:

"This out of school suspension is for making false accusations against Mr.

McGonigle, Middle School Principal and copyright laws in using a

photograph of Mr. McGonigle that was property of the Blue Mountain

School District." *Id.*

55.     Admitted.

56.     Denied. The informal hearing was cancelled after Plaintiffs asked to

bring counsel and instead a conference about J.S.'s work was held.

57.     Admitted.

58.     Denied. It is denied that "academically, J.S. was at the same point as

her fellow classmates when she returned to school." J.S. missed classroom

instruction for ten days during her suspension and when she returned she

"had to make up some tests" and "she didn't much like school then." (J.S.

Dep. 61-62).

59.     Admitted.

60.     Admitted.

61.     Admitted.

62.     Admitted.

63.     Admitted.

64.     Admitted.

65.     Denied.  There has been no deposition testimony or other record evidence suggesting that McGonigle's current or future employment opportunities were or could have been affected by the MySpace profile, which did not identify him by name or school.  While Defendants cite Romberger's testimony for the proposition that the profile could have affected McGongile's current or future employment opportunities, Romberger herself testified that she did not find the statements in the profile to be believable.  (Romberger Dep. 63).  Indeed, Romberger instantly concluded that the statements in the MySpace profile about McGonigle were not true.  *Id.*  ("when  saw this [MySpace profile], I did not ask him that question.  I did not think it was true.").   Moreover, it would be nothing more than speculation to determine how the MySpace profile "could have" affected McGonigle's current or future employment opportunities.

66.     Admitted.

67.     Admitted.

68.     Denied.  J.S. testified that the MySpace profile was intended as a joke and was not meant to be taken seriously.  (J.S. Dep. 11).  J.S. did not testify that the URL implies that McGonigle is a pedophile, instead, she stated that "if somebody took it seriously, they would think he was a pedophile."  (J.S. Dep. 22).

69.     Denied.   Although J.S. testified that the MySpace profile portrays McGonigle as a sexual predator of young students, J.S. also testified that the entire profile was intended to be a parody and not taken seriously.  (J.S. Dep. 22)  Thus, the portrayal of McGonigle as a sexual predator must be considered in the context of the parody.

70.     Admitted.

71.     Admitted.

72.     Admitted.

73.     Denied.  Terry Snyder testified that the statements in the MySpace profile were "false" and "fiction."  (Terry Snyder Dep. 39-40).  Mrs. Snyder did not testify that the statements were "false accusations."  *Id.*  On the contrary, Mrs. Snyder testified: "I don't think it is making an accusation." *Id*. at 39.

74.     Admitted.

75.     Admitted.

76.     Admitted in part. It is admitted that on the day that McGonigle suspended J.S. and K.L. he asked Mrs. Guers to sit in on the disciplinary meeting with J.S. and K.L. and then in the meetings with their mothers because it is his normal practice to have someone else present if it is a serious discipline matter.  (McGonigle Dep. 156-57).  It is admitted that on

the morning of J.S.'s suspension, Mrs. Guers was administering standardized testing. Id. at 158. McGonigle pulled Mrs. Guers out of supervising testing to participate in the disciplinary meetings with J.S., K.L. and their mothers. *Id.* at 158-60. Mrs. Frain stepped in and took Mrs. Guers's place in administering the testing. *Id.* As a result, Mrs. Frain had to cancel approximately two appointments with students. And those students with canceled appointments would be sent back to class. *Id.*

77. Denied. As a result of the litigation, not the MySpace profile itself, Defendant McGonigle experienced changes to his health such as chest pains and an inability to sleep. (McGonigle Dep. 166, 177).

78. Denied. Mr. Nunemacher, another teacher, heard students talking about the profile during his second period eighth grade Algebra I class on Thursday, March 22, after J.S. and K.L. had already been called to Mr. McGonigle's office.[2] (Nunemacher Dep. 9). Mr. Nunemacher approximated that six or seven students were involved in the discussion. (Nunemacher Dep. 16).

---

[2] Mr. McGonigle testified that Mr. Nunemacher approached him on Tuesday March 20, 2007 regarding the conversations in his eighth grade math class about the MySpace profile. (McGonigle Dep. 39-40). Mr. Nunemacher testified that the discussions in his eighth grade math class occurred on the day that J.S. was suspended, Thursday March 22, 2007. (Nunemacher, Dep. 9).

79.     Admitted.

80.     Denied. Mr. Nunemacher also heard "rumblings" during that same week in March 2007 that he believed to be related to the MySpace profile but could not say with certainty that the comments were or were not related to the profile. *Id.* at 18-19.

81.     Denied. Mr. Nunemacher testified that he overheard students talking about Mr. McGonigle as getting what he deserved and that he interpreted that to mean that McGonigle had no right to impose discipline on J.S, not other students. (Nunemacher Dep. 30). ("...Any you also said at the end of your statement that they thought nothing - - he couldn't do anything to them; is that correct? They said nothing - - that Mr. McGonigle could not' do anything to J,. That he had no right to do anything. And did you interpret that to mean he could not impose discipline on her? Yes.")

82. Admitted.

83. Denied. McGonigle testified that he believed there were more discipline problems but did not offer any statistics or examples and was voicing his "suspicions".

84. Admitted.

85. Admitted.

Respectfully submitted,

Dated:       December 10, 2007.      */s/ Mary Catherine Roper*
Mary Catherine Roper (ID No. 71107)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF PA
P.O. Box 40008
Philadelphia, PA 19106
(T) 215-592-1513 ext. 116
(F) 215-592-1343
mroper@aclupa.org

Mary E. Kohart (I.D. No. 37191)
Meredith W. Nissen  (I.D. No. 93504)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th  and Cherry Streets
Philadelphia, PA  19103-6996
(215) 988-2700

Deborah Gordon (I.D. No. 95071)
EDUCATION LAW CENTER-PA
1315 Walnut St., Suite 400
Philadelphia, PA  19107
(T) (215) 238-6970, ext. 313
(F) (215) 772-3125
dgordon@elc-pa.org

Attorneys for Plaintiffs

## CERTIFICATION OF SERVICE

I, Mary Catherine Roper , hereby certify that, on the date set forth below, I

caused to be served by ECF a true and correct copy of the foregoing upon:

Jonathan P. Riba, Esquire
Sweet, Stevens, Tucker & Katz, LLP
P.O. Box 5069
331 Butler Ave.
New Britain, PA 18901

Dated:        December 10, 2007.        */s/ Mary Catherine Roper*
Mary Catherine Roper