IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

J.S., et al.   )
               )
    v.         ) No: 3:07-cv-585
               )
BLUE MOUNTAIN SCHOOL )
DISTRICT, et al., )
               )
               ) **ELECTRONICALLY FILED**
               )

# MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

ARGUMENT .................................................................................................... 2

I. THE DEFENDANTS' SUSPENSION OF J.S. VIOLATED
   HER RIGHTS UNDER THE FIRST AMENDMENT
   BECAUSE HR SPEECH WAS PROTECTED AND
   DEFENDANTS HAVE FAILED TO JUSTIFY THE
   PUNISHMENT OF THAT SPEECH................................................... 2

   A. J.S.'s Profile Of McGonigle Is Protected Parody,
      Not Libel ............................................................................... 2

   B. Defendants Cannot Justify The Suspension Of J.S.
      Under *Tinker* and Third Circuit Precedent Applying
      *Tinker* .................................................................................. 7

II. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT
    ON J.S.'S CLAIMS THAT THE DISTRICT'S POLICIES ARE
    UNCONSTITUTIONAL AND THAT THE DISTRICT ACTED
    ULTRA VIRES WHEN IT DISCIPLINED HER FOR OUT OF
    SCHOOL CONDUCT......................................................................10

III. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT
     ON THE SNYDERS' CLAIMS THAT THE DISTRICT'S
     DISCIPLINE OF J.S. FOR OUT-OF-SCHOOL CONDUCT
     VIOLATED THEIR SUBSTANTIVE DUE PROCESS
     RIGHTS...........................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Beverly Enters., Inc. v. Trump*, 182 F.3d 183 (3d Cir. 1999) .......................... 3

*Bushch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764 (N.D. Tex. 2007) ............ 6

*Campbell v. Acuff-Rose*, 510 U.S. 569 (1994) ................................................ 5

*Charles Atlas, Ltd v. DC Comics*, 112 F. Supp. 2d 330 (S.D.N.Y. 2000) ................................................................................................................ 5

*D.O.F. v. Lewisburg Area Sch. Dist.*, 868 A.2d 28 (Pa. Commw. Ct. 2004 ................................................... 12-13

*Flaherty v. Keystone Oaks Sch. Dist.* Civ. A. No. 01-586, TS (W.D. Pa. Apr. 13, 2001) .............................. 11,12

Geary v. Goldstein, No 91 CIV. 6222 (KMW), 1996 WL 447776 S.D.N.Y. Aug. 8, 1996) ........................................................................ 6

*Hoke v. Elizabethtown Area Sch. Dist.*, 833 A.2d 304 (Pa. Commw. Ct. 2003), *appeal denied*, 847 A.2d 59 (Pa. 2004) ............................................................................................. 13

*Hustler v. Falwell*, 485 U.S. 46 (1988) ........................................................ 5,7

*Jee v. New York Post Co.*, 671 N.Y.S2d 920 (N.Y. Sup. 1998) .................... 7

*Kapiloff v. Dunn*, 343 A.2d 251 (Md. Ct. Spec. App. 1975) ......................... 7

*Killion v. Franklin Regional Sch. Dist.*, 136 F. Supp. 2d 446 (W.D. Pa. 2001) .......................................................................... 11,12

*Kryeski v. Schott Glass Tech., Inc.*, 626 A.2d 595 (Pa. Super. Ct. 1993) ................................................................................................................ 4

*Layshock v. Hermitage Sch. Dist*, 496 F. Supp. 2d 587
(W.D. Pa. 2007) .................................................................................. 12

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal.
1998) ..................................................................................................... 5

*Saxe v. State Coll. Area Sch.l Dist.*, 240 F.3d 200 (3d Cir. 2001) ................... 9

*Sypinewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3d Cir.
2002) ................................................................................................. 8,9

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .... passim

*Thomas v. Board of Ed. of Granville Central School Dist.*, 607 F.2d
1043 (2d Cir. 1979) ............................................................................ 14

*Thomas Merton Center v. Rockwell Int'l Corp.*, 442 A.2d 213 (Pa.
1981) ..................................................................................................... 3

*Wisniewski v. Bd. of Educ. Of Weedsport Cent. Sch. Dist.*, 494 F.3d
34 (2d Cir. 2007) ............................................................................... 7,8

*Wisniewski v. Board of Education Of Weedsport Central School District*, No. 5:02CV1403, 2006 WL 1741023 (N.D.N.Y. June 20,
2006) ..................................................................................................... 7

## STATUTES

24 P.S. § 5-510 .................................................................................. 14

Defendant Blue Mountain School District[1] admits that it punished J.S. for speech she wrote entirely out of school, and concedes that it bears the burden of proving that speech did or was reasonably expected to cause substantial and material disruption to the functioning of the school. *See Tinker v. Des Moines Indep. Cmty. Sch. Dis.,* 393 U.S. 503, 509 (1969). On this point, Defendant relies upon authority from other federal circuits applying the *Tinker* standard in a manner that is unrecognizable in the Third Circuit. *No court in the Third Circuit has found the Tinker "substantial and material disruption" standard satisfied on so slim a record as exists in this case.* Defendant has not, and cannot, meet its obligation under *Tinker* and therefore is not entitled to summary judgment on J.S.'s First Amendment claim.

Defendant's arguments for dismissal of the remaining claims of J.S. and her parents must fail, as well. Those arguments are internally inconsistent, disregard the testimony of Dr. Romberger and Principal McGonigle regarding the reach of the District's policies, and misstate the statutory authority of the District and the fundamental parental authority of the Snyders.

---

[1] By agreement with Defendants, Plaintiffs have voluntarily dismissed the two individual defendants: Dr. Romberger and Mr. McGonigle (Docket No. 48). As a result, Plaintiffs will not address the arguments in Sections IV.B and IV.F of Defendants' Brief, as they are moot. This Brief will only address the claims against the sole remaining Defendant, Blue Mountain School District.

I.  **DEFENDANT'S SUSPENSION OF J.S. VIOLATED HER RIGHTS UNDER THE FIRST AMENDMENT BECAUSE HER SPEECH WAS PROTECTED AND DEFENDANT HAS FAILED TO JUSTIFY THE PUNISHMENT OF THAT SPEECH**

Defendant has the burden of justifying any infringement of speech that is protected by the First Amendment. Defendant seeks, first, to dodge this obligation by misconstruing the law of defamation to argue that J.S.'s speech was not protected and, failing that, tries to persuade the Court to ignore the settled law of this Circuit regarding the burden that school officials bear when they discipline students for their speech. Neither presentation of the law is correct, nor do Defendant's arguments accurately present the factual record. Defendant's motion for summary judgment should be denied.[2]

A.  **J.S.'s Profile Of McGonigle Is Protected Parody, Not Libel**

Defendant's argument that the profile was defamatory *per se* and therefore actionable even in the absence of evidence of special damage mistakes the issue. The question here is not whether McGonigle can plead a claim for defamation, but whether the MySpace profile would have been viewed by a reasonable person as a serious accusation of sexual misconduct or as a juvenile prank.

---

[2] Defendant relies upon its Statement of Uncontested Facts. As is pointed out in Plaintiffs' Answer to that Statement (Docket No. 47), however, a number of Defendant's "uncontested" factual assertions are not supported by the record and are not "uncontested".

In determining whether speech is defamatory, the Court must consider the speech in context, for "words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable." *Thomas Merton Center v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981) ("Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.") (internal citations and quotations omitted).

The question the Court must answer is not whether the statements were offensive or whether, in a different context, they could have inflicted harm, for "Courts in Pennsylvania and elsewhere have long recognized a distinction between actionable defamation and mere obscenities, insults, and other verbal abuse."

> "A certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more.... No action for defamation will lie in this case." ... Trump's exclamation that "you people at Beverly are all criminals" is reasonably understood as a vigorous and hyperbolic rebuke, but not a specific allegation of criminal wrongdoing.

*Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 88 (3d Cir. 1999) (quoting Restatement (Second) of Torts § 566, comment e (1977)). Statements that are not intended to be taken literally – particularly where they are not, in fact, taken literally – are, as a matter of law, not capable of defamatory meaning:

3

> [T]he statement made by Ms. Yordy [that the plaintiff was "crazy"] was not meant in the literal sense. It was no more than "a vigorous epithet" in response to Ms. Kryeski's accusations about Ms. Yordy's affair and her promotions. Moreover, as stated earlier, a necessary factor in establishing defamation is the understanding by the recipient of its defamatory meaning. Appellant conceded that the Yuhases did not treat appellant any differently after hearing the statement about appellant and that Mrs. Yuhas indicated that she knew appellant was not crazy. N.T. 6/14/91 at 105, N.T. 4/30/91 at 139. Accordingly, the trial court did not err in granting summary judgment on appellants' claim for defamation.

*Kryeski v. Schott Glass Tech., Inc.*, 626 A.2d 595, 601 (Pa. Super. Ct. 1993)

The portrayal of McGonigle as a principal who has sexual relationships with students appears in a purported self-description penned by a fourteen-year-old that also describes the principal as a man who lives in Alabama, has a child who looks like a gorilla, lists "being a tight ass" as one of his hobbies and claims to be a hairy, expressionless, sex addict. The profile cannot be taken as a literal self-description and, indeed, was not – J.S. testified that none of the students she spoke with took the statements in the profile literally and the school officials who saw the website instantly dismissed it as untrue. (J.S. Dep. 29-32); (Romberger Dep. 63). As in *Kryeski*, the record establishes that the statements in the profile were neither intended nor received as assertions of fact.

Defendant argues that in the absence of a disclaimer or other label, the profile should be treated as assertion of fact rather than as parody. But it is well settled that a disclaimer or other labeling is not required to establish that speech is

4

a parody. *See, e.g., Campbell v. Acuff-Rose,* 510 U.S. 569, 583 n. 17 (1994) ("[p]arody serves its goals whether labeled or not, and there is no reason to require parody to state the obvious (or even the reasonably perceived)."); *Mattel, Inc. v. MCA Records, Inc.,* 28 F. Supp. 2d 1120, 1137 (C.D. Cal. 1998) (Barbie Doll song was protected parody even without disclaimer or label as such); *Charles Atlas, Ltd v. DC Comics, Inc.* 112 F. Supp. 2d 330, 338 n.12 (S.D.N.Y. 2000) (rejecting argument that comic book ad not parody because promotional materials for the satired character make no mention of satire or parody). Parody is defined as statements about a person that cannot reasonably be understood as describing actual facts. It is <u>not</u> defamation specifically because – like the statement in *Kryeski* – it is not an assertion of truth. *Hustler v. Falwell,* 485 U.S. 46, 48-49 (1988); *Bushch v. Viacom Int'l, Inc.,* 477 F. Supp. 2d 764, 776 (N.D. Tex. 2007) (dismissing defamation claim involving parody advertisement on the Daily Show: "plaintiff has failed to allege the first element of a claim for defamation, namely that the challenged broadcast contains assertions of fact about him, and because no reasonable viewer would have believed that the challenged clip in an October 2005 broadcast of They Daily Show contained assertions of fact about him . . . ."). [3]

---

[3] Defendant falsely contends that J.S. admitted that the MySpace profile was not a parody. J.S. testified that she was "mad" at McGonigle but also testified she intended the profile to be "a joke between me and my friends." (Preliminary Injunction Transcript, at 12). As the evidence makes clear, J.S. did not intend to
(continued...)

5

The fact that J.S's parody alluded to sexual misconduct does not, as Defendant suggests, change the analysis. In *Geary v. Goldstein*, No. 91 Civ. 6222 (KMW), 1996 WL 447776, at *1 n.2 (S.D.N.Y. Aug. 8, 1996), the court dismissed defamation claims arising from a pornographic parody advertisement for Wasa Crispbread that used the plaintiff's likeness, holding that in the context in which the advertisement was aired, "reasonable" viewers would "understand that the Parody was both a composite and a parody, created without Geary's or Wasa's consent." *Id.* at 2. The *Geary* court noted that there was no evidence that "any actual viewer made, or reasonable viewer would make, the defamatory inference alleged." *Id.* at *1 n.4.

Although Defendant argues that a hypothetical "reasonable community member" might have viewed the MySpace profile and believed the statements contained therein,[4] there is no evidence to support that bald assertion. Instead, all of the evidence establishes that no one – student or adult – who viewed the profile

---

(..continued)
harm McGonigle with lies but instead intended to make students laugh at him. (J.S. Dep. 11).

[4] Defendant also claims that "anybody performing a search of MySpace would have had complete access to the profile of McGonigle and would undoubtedly find the information contained on the website extremely alarming." Def.'s Motion, p.8. This is not accurate. The record establishes that the MySpace profile did not contain any searchable identifying information about Mr. McGonigle. (J.S. Dep. 15-18). Indeed, McGonigle himself was unable to find the profile until he was given the specific web address. (McGonigle Dep. 35-38).

6

treated it as a factual allegation of misconduct by McGonigle. *See, e.g.,* Romberger Dep. 33, 63; Terry Snyder Dep. 15 ("I can't see how anyone would take this seriously."). J.S.'s parody profile of McGonigle was protected speech.[5]

### B. Defendant Cannot Justify The Suspension Of J.S. Under *Tinker* and Third Circuit Precedent Applying *Tinker*

Rather than addressing the law of this Circuit, Defendant relies upon a Second Circuit case upholding the suspension of student who circulated messages with a violent icon and the message "Kill Mr. VanderMolen" to his friends. *See Wisniewski v. Board of Educ. Of Weedsport Cent. Sch. Dist.,* 494 F.3d 34 (2d Cir. 2007). The *Wisniewski* district court did not cite *Tinker* or invoke that test, but instead gave collateral estoppel effect to the school district's determination that the student's threat should be treated as genuine and therefore held that the speech was a "true threat" not protected by the First Amendment. *Wisniewski v. Board of Educ. Of Weedsport Cent. School Dist.,* No. 5:02CV1403, 2006 WL 1741023, *8 (N.D.N.Y. June 20, 2006).

---

[5] Defendant contends that McGonigle is not a public figure for purposes of a First Amendment analysis because he did not thrust himself into public debate. But McGonigle is a public *official*, employed by the Blue Mountain School District and therefore subject to the same exposure as a public figure, regardless whether he sought out the public's notice. *Hustler,* 485 U.S. at 51 (applying same standard to both public officials and public figures); *Jee v. New York Post Co.,* 671 N.Y.S.2d 920, 923 (N.Y. Sup. 1998) (finding public school principal is a "public official" within meaning of First Amendment); *Kapiloff v. Dunn,* 343 A.2d 251 (Md. Ct. Spec. App. 1975) (same).

7

The Second Circuit sidestepped the district court's analysis entirely and instead held that the student's suspension should be upheld under *Tinker* because – as Defendant cites in its brief – " it was reasonably foreseeable that the IM icon would come to the attention of school authorities" and "there can be no doubt that the icon, once made known to the teacher and other school officials, would foreseeably create a risk of substantial disruption within the school environment." *Wisniewski*, 494 F.3d at 39-40. The Second Circuit did not explain why – when the icon had been in circulation among students for three weeks without incident – its eventual revelation to school officials would "no doubt" cause disruption at school. In addition to *Wisniewski*, Defendant relies upon district court decisions from other Circuits finding *Tinker's* "substantial and material disruption" in student inattention during class. Def.'s Brief, at p. 16 n. 7. Defendant does not cite any Third Circuit authority in its discussion of J.S.'s First Amendment claim.

This analysis from other Circuits cannot be reconciled with the law of this Circuit (nor, indeed, the facts of *Tinker*). As is explained fully in Plaintiffs' brief in support of their motion for summary judgment, in *this* Circuit the "substantial and material disruption" standard is not satisfied by the conclusory approach of the Second Circuit in *Wisniewski*, but requires a detailed and careful examination of the facts. And, of course, "substantial and material disruption" cannot be found in a few minutes of student inattention in class. *See Sypinewski v. Warren Hills*

*Regional Board of Educ.,* 307 F.3d 243, 262 (3d Cir. 2002); *Saxe v. State College Area School District,* 240 F.3d 200, 211 (3d Cir. 2001).

The only disruption caused by the profile before J.S.'s suspension was a brief (less than ten minute) episode in which a math teacher had to direct his students to return to their work in class. Pl. Uncontested Facts, ¶¶ 32-38.[6] Neither that "disruption" nor the "buzz" of students talking outside of class about the profile resulted in a single episode of student discipline, as would be expected if there were any actual disruption. *No court in this Circuit has found a "substantial and material disruption" on so slim a record.* See Plaintiffs' Br. at pp 5-12.

Defendant argues, therefore, that it was "reasonably foreseeable" that more disruption would follow. While the Third Circuit standard does envision the reasonable anticipation of disruption even where none has yet occurred, "[i]n the absence of such history, the fear of disruption is likely to be no more than 'undifferentiated fear or apprehension of disturbance.'" *Sypinewski,* 307 F.3d at 262. *See also Saxe,* 240 F.3d at 212 ("If a school can point to a well-founded expectation of disruption – especially one based on past incidents arising out of similar speech – the restriction may pass constitutional muster.") (emphasis added).

---

[6] Defendant's characterization of the actual disruptions that occurred are inaccurate and substantially overblown, as is detailed in Plaintiffs' brief in support of their motion for summary judgment (Docket No. 43), Statement of Uncontested Facts (Docket No. 37), and Answer to Defendant's Statement (Docket No. 47).

9

Here, Defendant has not produced any evidence of past incidents arising out of similar speech – or any other experience – that would give the Blue Mountain School District a particularized reason to suspect a material and substantial disruption from the MySpace profile. Instead, Defendant grasps at unfounded speculations. Defendant points to the deposition of Terry Snyder, where counsel asked Ms. Snyder to speculate as to whether the MySpace Profile could cause disruptions. (Terry Snyder Dep. 41). Terry Snyder responded that "I would imagine it could get out of control." *Id.* Speculations, however, do not satisfy the required standard under the foreseeable disruption analysis – not even when they are the speculations of a math teacher. *See* Def. Brief, p. 16 n. 7. Moreover, both speculations are contradicted by McGonigle, who testified that being insulted by students is a routine part of his job, (McGonigle Dep. 178) ("As a principal, you don't make it until you get your name on the bathroom wall"), and that he believed the students had lost respect for his authority because of the suit brought by J.S. and her parents, not because of the profile. (McGonigle Dep. 153).

This Court should reject Defendant's effort to rewrite the law of this Circuit and deny Defendant's motion for summary judgment.

**II. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON J.S.'S CLAIMS THAT THE DISTRICT'S POLICIES ARE UNCONSTITUTIONAL AND THAT THE DISTRICT ACTED ULTRA VIRES WHEN IT DISCIPLINED HER FOR OUT-OF-SCHOOL CONDUCT.**

Defendant argues that its policies are limited by preamble language to "times when students are under the direct control and supervision of school district officials," Def.'s Brief, p. 23, and therefore avoid the constitutional problems of the policies struck down in *Killion* and *Flaherty*.[7] Any unconstitutional action, says Defendant, was a misapplication of its policies. Def.'s Brief, p. 25 and n.12.

That argument has two problems: the first is that Defendant argues, just two pages later, that McGonigle and Romberger "may arguably have exercised 'mistaken judgment' in handing down the punishment they did for J.S., [but] they were authorized to do [that] both by way of District policy as well as statutory law." Def.'s Brief, p. 27. Defendant cannot win both arguments – the punishment of J.S.'s out-of-school speech could not be both a "misapplication" of constitutional policies and "authorized by" those policies.

The answer to this conundrum is found in the testimony of McGonigle and Romberger: regardless of the introductory language in the Code of Discipline, two of the highest officials of the District interpret and apply that Code to permit discipline of out-of-school speech and conduct. *See, e.g.,* (McGonigle Dep. 66-67) (stating that Code authorized him to punish J.S. for same speech if she had made it

---

[7] Defendant also suggests that the Code's statement that it was intended to comply with all applicable laws means that the policy could not mean anything contrary to law. That argument is unsupported and specious. A policy cannot be
(continued...)

11

to a crowd at a Philly's game and that had been reported to him at school); *Id.* at 67-69 (stating that he is authorized by Code to punish student for same speech made in a park if a newspaper reported it and someone brought the newspaper to school); Romberger Dep. 69-70 (stating that School District is authorized to punish students under Acceptable Use Policy for what they do from their home computers). This testimony flatly contradicts Defendant's argument that the policies are properly limited in scope under *Killion, Flaherty* and *Layshock,* and precludes summary judgment for Defendant on J.S.'s claim that the District's policies violate the First Amendment by allowing punishment of out-of-school speech.

Defendant's argument that it did not act *ultra vires* is related. Defendant agrees that it is statutorily prohibited from punishing students except "during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school." 24 P.S. § 5-510. Defendant argues, however, that this means it could J.S. because somebody else brought the MySpace profile to school (at McGonigle's direction!), because she talked about it at school, and because it was not "unrelated to school". This argument is flatly contradicted by the governing case, *D.O.F. v. Lewisburg Area Sch. Dist.,* 868 A.2d 28 (Pa. Commw. Ct. 2005).

---

(..continued)
insulated from constitutional challenge by the addition of a clause saying that it is intended to comply with the law.

In *D.O.F.*, the Court determined that a student could not be punished for smoking marijuana on a school playground at night because "we cannot agree that he was 'under the district's supervision at the time of the incident.'" *D.O.F.*, 868 A.2d at 35 (quoting *Hoke v. Elizabethtown School District*, 833 A.2d 304, 313 (Pa. Commw. Ct. 2003)).[8] There is *no* authority, in *D.O.F.* or elsewhere, for Defendant's argument that it was statutorily empowered to punish J.S. for conduct that occurred out of school but was later discussed in school.

J.S. was not suspended for talking about the MySpace profile in school, nor for anything else she did in school. She was punished for what she created at home, on her family's computer. As the court concluded in *D.O.F.*:

> Given that we conclude that the incident in question did not occur while D.O.F. was "under the supervision of the board of school directors and teachers ...", we find the District's enforcement of Policy 227 and Administrative Guideline 227 under these circumstances to be a violation of its statutory authority.

*D.O.F.*, 848 A.2d at 36. Defendant's motion for summary judgment on J.S.'s claim that it acted *ultra vires* when it disciplined her for conduct she engaged in outside of school must be denied.

---

[8] The quoted language is from the trial court's opinion, which is adopted by the Commonwealth Court *in toto* and appended to its opinion. *See D.O.F.*, 868 A.2d at 32 ("As this Court agrees with the trial court's decision and further concludes that ... opinion thoroughly discusses and properly disposes of the arguments, ... we adopt the analysis in President Judge Woelfel's opinion....").

13

### III. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE SNYDERS' CLAIM THAT THE DISTRICT'S DISCIPLINE OF J.S. FOR OUT-OF-SCHOOL CONDUCT VIOLATED THEIR SUBSTANTIVE DUE PROCESS RIGHTS.

Defendant's argument that Terry and Steven Snyder have no right to "be the exclusive disciplinarian of their children" is contrary to law. The authorities cited in Defendant's brief state, quite correctly, that parents cede some authority over their child when that child attends school. But neither those cases nor any other states that a parent shares her authority with the school when the child is not subject to school supervision. Outside of school, parents do, in fact, have the sole authority to raise their children and punish them – or not – as they alone see fit. *See e.g., Thomas v. Board of Ed. of Granville Central School Dist.,* 607 F.2d 1043, 1051 (2d Cir. 1979) ("the First Amendment forbids public school administrators and teachers from regulating the material to which a child is exposed after he leaves school each afternoon"). Indeed, that is the meaning of the state law limitation on school authority: parents simply do not share authority with the District when a child is not "under the supervision of the board of school directors and teachers." 24 P.S. § 5-510.

Plaintiffs' claim is not that the District's discipline of J.S. prevented them from disciplining their daughter. It is that the District's discipline of J.S. intruded upon their family and parental sphere of control. And, of course, the District's discipline of J.S. was *not* consistent with the Snyders' view of how she should be

14

punished for her conduct: the Snyders repeatedly and consistently objected to the suspension. (Facts ¶ 89); *see also* (T. Snyder Dep. 31-32); (S. Snyder Dep. 15-16). Defendant's request for summary judgment on the Snyders' claim is contrary to law and should be denied.

Respectfully submitted,

Dated: January 7, 2008.

*/s/ Meredith W. Nissen*
Mary Catherine Roper (ID No. 71107)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF PA
P.O. Box 40008
Philadelphia, PA 19106
(T) 215-592-1513 ext. 116
(F) 215-592-1343
mroper@aclupa.org

Mary E. Kohart (I.D. No. 37191)
Meredith W. Nissen (I.D. No. 93504)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700

Deborah Gordon (I.D. No. 95071)
EDUCATION LAW CENTER-PA
1315 Walnut St., Suite 400
Philadelphia, PA 19107
(T) (215) 238-6970, ext. 313
(F) (215) 772-3125
dgordon@elc-pa.org

Attorneys for Plaintiffs

## CERTIFICATION OF SERVICE

I, Meredith W. Nissen , hereby certify that, on the date set forth below, I caused to be served by ECF a true and correct copy of the foregoing upon:

> Jonathan P. Riba, Esquire
> Sweet, Stevens, Tucker & Katz, LLP
> P.O. Box 5069
> 331 Butler Ave.
> New Britain, PA 18901

Dated:　　　January 7, 2008.　　　*/s/ Meredith W. Nissen*
　　　　　　　　　　　　　　　　　Meredith W. Nissen