IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.S., et al. | ) | |
| | ) | |
| v. | ) | No: 3:07-cv-585 |
| | ) | |
| BLUE MOUNTAIN SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| | ) | **ELECTRONICALLY FILED** |
| ________________________________ | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The MySpace profile created by J.S. is facially absurd. It is written in the first person and presented as self-derogation: it portrays a school principal who exults in being "perverted" and describes himself, his wife and his child in insulting terms. Defendant's argument that "anyone viewing the profile would think that McGonigle himself wrote it" (Def. Opp. at 7) is unsupported by a single fact in the case and is specious. The profile is not something anyone would believe was written by a principal about himself and therefore is incapable of defamatory meaning. It is, for that reason, protected speech, which Defendant punished without a reasonable expectation that it would cause substantial and material disruption of the school. The Court should grant Plaintiffs' motion for summary judgment as to J.S.'s First Amendment claim, as well as the other claims.

## I. J.S. Is Entitled To Judgment On Her First Amendment Claim

### A. The Profile Is Protected Speech

Defendant wastes many pages in arguing about J.S.'s supposed intent in creating the MySpace profile.[1] Whether this is First Amendment protected speech does not depend on whether J.S. insulted McGonigle because she was mad at him or

[1] Defendant argues both that J.S. intentionally wrote false things *and* that the profile is based "on fact" because J.S. wrote about other students' tales about McGonigle – tales she did not believe. J.S. testified that she never intended for anyone to take the profile seriously and that no reasonable person would. (J.S. Dep. 22). But it does not matter which version of the facts Defendant advances is actually true, because J.S.'s intent is irrelevant where no reasonable person would take the profile as an assertion of fact.

just for fun. The only thing that matters for the parody vs. defamation analysis is whether any reasonable person would have taken this as a serious assertion of fact. That is the standard under both Pennsylvania and federal law, as is set forth in Plaintiffs' previous briefs.

As noted above – and in prior briefing – the MySpace profile is facially absurd. There is no evidence that anyone would take it seriously. Defendant argues that the MySpace Profile may nonetheless be capable of defamatory meaning because excerpts of the Profile could be quoted and "quotations may be a devastating instrument for conveying false meaning." Def.'s Opp. at 7. This position, however, is contrary to Third Circuit and Pennsylvania precedent holding that potentially defamatory language must be viewed in context of the entire speech. *See, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001) (allegedly defamatory statements must be "[v]iew[ed] … in their appropriate contexts); *Thomas Merton Center v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981) (same). Moreover, there is no evidence that parts of the MySpace profile were ever quoted or viewed out of context. Defendant's effort to parse the MySpace profile cannot remove the protection of the First Amendment.

**B. Defendant Cannot Establish A Reasonable Likelihood That The Profile Would Have Caused Substantial And Material Disruption.**

Defendant does not even attempt to argue that it can meet the *Tinker* "substantial and material disruption" standard as applied by the Third Circuit in *Saxe v.*

*State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001), and *Sypniewski v. Warren Hills Regional Bd of Educ.*, 307 F.3d 243 (3d Cir. 2002). Instead, Defendant argues that the Third Circuit cases are "no longer controlling" (Def.'s Opp. at 9-10 n.4) because of *Morse v. Frederick*, ___ U.S. ___, 127 S. Ct. 2618 (2007), or that they are inapposite. All of Defendant's arguments misstate the law.

*Morse* did not change the substantial and material disruption standard of *Tinker* – indeed, *Morse* did not even apply *Tinker*, but held that the school could punish Joe Frederick's use of a banner that said "Bong Hits For Jesus" in the absence of even an inquiry about disruption because messages promoting illegal drug use have no place in school. *Morse*, 127 S. Ct. at 2629. *See also*, *id.* at 2628 ("[T]he rule of *Tinker* is not the only basis for restricting student speech.").

So Defendant is incorrect that the Third Circuit's formulation of the *Tinker* standard in *Saxe* and *Sypniewski* no longer govern this Court's application of *Tinker's* "substantial and material disruption" standard. Nor can Defendant successfully argue that the Third Circuit decisions should be ignored because they do not address off-campus speech like the speech at issue here. Schools have *less* authority to punish out-of-school speech, *see Morse*, 127 S. Ct. at 2626 (noting that the student's speech in *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986), would have been protected if spoken outside the school), so that distinction cannot justify the application of a less protective standard from other Circuits.

Finally, Defendant's citation to *Tinker's* "invasion of the rights of others"

language is irrelevant in this case. As Defendant's own authorities establish, that language only permits punishment of speech that is tortious. If J.S.'s speech is defamatory, it does not have First Amendment protection and *Tinker* does not apply.

Defendant has failed to establish that the speech at issue caused a foreseeable or actual disruption and Plaintiffs are entitled to summary judgment on their First Amendment claim.

## II. Plaintiffs' Remaining Claims

Defendant's arguments that the speech is defamatory has no place in the *ultra vires* analysis. Pennsylvania statutory law limits the reach of school discipline, regardless whether the conduct is tortuous or even criminal, as was established in *D.O.F. v. Lewisburg Area School District*, 868 A.2d 28, 35-36 (Pa. Commw. Ct. 2004), in which the court held that a student who smoked marijuana on a school playground at night could not be punished by the school district. Therefore, the Defendant's punishment of J.S. for her out-of-school conduct was *ultra vires* whether or not that conduct was protected by the First Amendment.

Plaintiffs are also entitled to summary judgment on their claim that the School District policies are unconstitutionally vague and overbroad because they are interpreted by the District's policy makers to extend to off-campus conduct. *See Monell v. Dept. Soc. Svcs. New York*, 436 U.S. 658, 693 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury that the government as an entity is responsible under § 1983.").[2] Moreover, Defendant has again misrepresented the record by attempting to edit Romberger's testimony to say that AUP only governs student actions brought into the school. On the contrary, during Romberger's deposition, she explained that a student's actions in downloading a picture from the School District Website was itself a violation of the AUP Policy and did not, as Defendant attempts to add, say the picture would have to be brought to school for there to be a violation. (Romberger at 34-35). This testimony establishes that the District's policies are not properly limited to in-school conduct and are, therefore, unconstitutionally overbroad.

Respectfully submitted,

Dated: January 21, 2008.

*/s/ Mary Catherine Roper*
Mary Catherine Roper (ID No. 71107)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF PA
P.O. Box 40008
Philadelphia, PA 19106
(T) 215-592-1513 ext. 116
(F) 215-592-1343
mroper@aclupa.org

[2] The testimony of Romberger and McGonigle about the scope of the District's policies cannot be dismissed like the "hypothetical" questioning in *Busch v. Marple Newtown School District*, 2007 WL 1589507 (E.D. Pa. 2007). In *Busch*, the hypothetical questions were being used to establish anti-religious animus and not the interpretation of school policy. *Id*. at *2.

Mary E. Kohart (I.D. No. 37191)
Meredith W. Nissen (I.D. No. 93504)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700
Deborah Gordon (I.D. No. 95071)
EDUCATION LAW CENTER-PA
1315 Walnut St., Suite 400
Philadelphia, PA 19107
(T) (215) 238-6970, ext. 313
(F) (215) 772-3125
dgordon@elc-pa.org
Attorneys for Plaintiffs

## **CERTIFICATION OF SERVICE**

I, Mary Catherine Roper, hereby certify that, on the date set forth below, I caused to be served by ECF a true and correct copy of the foregoing upon:

Jonathan P. Riba, Esquire
Sweet, Stevens, Tucker & Katz, LLP
P.O. Box 5069
331 Butler Ave.
New Britain, PA 18901

Dated: January 21, 2008.

*/s/ Mary Catherine Roper*
Mary Catherine Roper