**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J.S., a minor, by and through her parents, TERRY SNYDER and STEVEN SNYDER, individually and on behalf of their daughter,** | : | **No. 3:07cv585** |
| | : | |
| | : | **(Judge Munley)** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Mehalchick)** |
| | : | |
| **v.** | : | |
| | : | |
| **BLUE MOUNTAIN SCHOOL DISTRICT,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the court for disposition is Magistrate Judge Karoline

Mehalchick's report and recommendation (hereinafter "R&R") regarding

plaintiffs' petition for attorney's fees and costs pursuant to 42 U.S.C. §

1988.  Both the defendant and the plaintiff have filed objections to the

R&R.  The matter has been fully briefed and is ripe for disposition.

**Background** [1]

In March 2007, Plaintiff J.S., a middle school student, created a

profile on the MySpace website purporting to be her principal.[2]  The

Defendant Blue Mountain School District suspended Plaintiff J.S. from

school as punishment for creating the imposter profile although she was

---

[1]The parties do not dispute the general background facts.  Thus, citations to the record have been omitted.

[2]We will refer to the minor plaintiff by her initials.  See Local Rule of Court 5.2(d)2.

not on school grounds when she created the profile.

Plaintiffs then instituted the instant action.  They averred the following: Count I -  the First Amendment precluded the school district from disciplining a student for the profile which was non-threatening, non-obscene and a parody; Count II - the First Amendment prohibited the school district's overly broad and vague policies;  Count III -  the School District acted beyond its statutory authority in punishing the plaintiff for out-of-school speech; and Count IV - the school district violated the parents' Fourteenth Amendment rights to determine how best to raise, nurture, discipline and educate their children.  The plaintiffs brought suit pursuant to the Civil Rights Statute of 1964, 42 U.S.C. § 1983.

We granted summary judgment to the defendant and the plaintiffs appealed to the Third Circuit Court of Appeals.  The Third Circuit affirmed this court's order.  The plaintiffs's then sought a petition for rehearing *en banc*, which the Third Circuit granted.  After the *en banc* rehearing, the Third Circuit reversed this court's ruling on Counts I and III and affirmed on Counts II and IV.   The defendant filed a petition for certiorari with the United States Supreme Court, which was denied.  The Third Circuit remanded the case to this court to determine appropriate relief.

2

The parties then stipulated to a judgment of $7500.00 in favor of Plaintiff J.S. (hereinafter "J.S.") and against the defendant school district for the violation of her rights.  (Docs. 75 & 76).   The parties, however, could not stipulate as to the matter of attorney's fees.  Thus, Plaintiff J.S. filed the instant petition for attorney's fees pursuant to 42 U.S.C. § 1988, which provides that the district court "may allow the prevailing party [in a § 1983 case] . . . a reasonable attorney's fee as part of the costs[.]"   Plaintiff J.S. seeks $436,553.25 in fees and $32,116.61 in costs related to the proceedings in this case.

We referred the attorney's fees petition to Magistrate Judge Mehalchick for the issuance of an R&R.  In her R&R, Judge Mehalchick suggests granting the motion in part and denying it in part.  The R&R recommends that the court award plaintiff $278,092.75 in attorney's fees and $31,926.61 in costs.  Both parties have filed objections to this recommendation, bringing the case to its present posture.

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. § 636

3

(b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

In the instant case, the parties only object to certain parts of the R&R, and they do not object to other parts.  In deciding whether to adopt the portions of the report and recommendation to which no objections are lodged, we must determine if a review of the record evidences plain error or manifest injustice.  FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); see also 28 U.S.C. § 636(b)(1); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

**Discussion**

It is well established that costs, attorney's fees and expenses may be awarded to a prevailing party in federal litigation where authorized by statute, court rule, or contract.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975); Hall v. Cole, 412 U.S. 1, 4

4

(1973).  As noted above, 42 U.S.C. § 1988 authorizes the award of

attorney's fees to the prevailing party in section 1983 cases.

When awarding attorney's fees and costs, courts within the Third

Circuit use the "lodestar" method.  See Maldonado v. Houstoun, 256 F.3d

181, 184 (3d Cir. 2001).  The first step in using the lodestar method is to

calculate "the product of the hours reasonably expended and the

applicable hourly rate for the legal services."  Pub. Interest Research Grp.

of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995) (citing Hensley v.

Eckerhart, 461 U.S. 424, 433,  (1983)).  After this product, known as the

"lodestar," is determined, the court has discretion to adjust the fee for a

variety of reasons, most notably "the 'results obtained' by the [prevailing

party.]"  Id. (citing Hensley, 461 U.S. at 434).

The "party seeking attorney fees bears the ultimate burden of

showing that its requested hourly rates and the hours it claims are

reasonable."  Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694,

703 n.5 (3d Cir. 2005) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183

(3d Cir. 1990)). To satisfy this burden, the party seeking fees is initially

required to submit evidence supporting the hours worked and the rates

claimed.  Id.  To the extent the opposing party seeks to challenge the fees

sought, "the opposing party must then object 'with sufficient specificity' to the request." Id. (quoting Rode, 892 F.2d at 1183)).

In the instant case, Magistrate Judge Mehalchick performed this analysis by first determining the hourly rate to be paid to the various attorneys.   She assigned the following hourly rates:

1) Attorney Mary Catherine Roper, senior staff attorney with the American Civil Liberties Union (hereinafter "ACLU") of Pennsylvania  - $300.00 per hour.

2) Attorney Witold Walczak, the legal director of the ACLU of Pennsylvania - $300.00 per hour.

3) Attorney Sara J. Rose - $250.00 per hour;

4) Attorney Morgan-Kurtz, a legal fellow of at the ACLU of Pennsylvania, $125.00 per hour;

5) Attorney Mary Kohart a partner at Drinker Biddle & Reath, LLC  - $300.00 per hour;

6) Attorney Cheryl Slipski, partner at Drinker Biddle &n Reath, LLC - $300.00 per hour;

7) Attorney Meredith Reinhardt - employed at Drinker Biddle & Reath, LLC - $250.00 per hour;

8) Attorney A. Kristina Littman -  employed at Drinker Biddle & Reath, LLC - $250.00 per hour;

9) Attorney Christopher Leahy - employed at Drinker Biddle & Reath, LLC - $250.00 per hour;

10) Attorney Sarosiek, an associate of Drinker Biddle & Reath, LLC - $125.00 per hour; and

11) Meredith Traunter, Chirstopher Kelly, Harley Miller, Stephen Dempsey, Thomas Cheng and Geraldine Powell, paralegals at Drinker Biddle & Reath LLC - $85.00 per hour.

(Doc. 92, R&R at 39).

To complete the lodestar calculation, Magistrate Judge Mehalchick then reviewed the hours requested as to each attorney.  She calculated the number of hours at 1134.63.  (Id.)  She multiplied the hours for each attorney by the hourly rates of the respective attorneys to arrive at the lodestar calculation of $278,92.75.  (Id.)  The defendant requested that the lodestar be reduced because the plaintiff did not prevail on all of her claims.  The magistrate judge denied this request to reduce the lodestar figure.  Thus, the final attorney fee figure reached by the R&R is $278,092.75.  (Id. at 42).  Finally, the magistrate judge calculated the costs

7

to be $31,926.61.  (Id. at 41).  Both the plaintiff and the defendant have filed objections to the R&R.  We will address both separately.

## I.  Plaintiff's objections

Plaintiff first objects to the hourly rates assigned to the first three attorneys listed above, Roper, Walczak and Rose.  Neither party objects to the hourly rate suggested for the remaining attorneys.  We find no clear error or manifest injustice with regard to the un-objected to attorney rates. Accordingly, we will adopt them.   We proceed to discuss the rates assigned to Attorneys Roper, Walczak and Rose.

Plaintiff's petition seeks the following hourly rates: $500.00 for Walczak; $400.00 and $325.00 for Rose.  As noted above, the Magistrate Judge suggests adjusting these rates downward.   She based this reduction upon the affidavits that were submitted by both the plaintiff and the defendant.   Plaintiff challenges the lower hourly rate.  She also argues that before applying a rate lower than the requested rate, the court must hold a hearing.   We will address these issues separately, beginning with whether a hearing is needed.

### A.  Necessity of a hearing

Plaintiff argues that a hearing is required to determine the

8

appropriate hourly rate to be applied to the various attorneys.[3]   Defendant

disputes the necessity for a hearing.  After a careful review, we agree with

the defendant that a hearing is unnecessary.

The Third Circuit Court of Appeals has explained that "the inquiry into

a proper fee should not assume massive proportions . . . dwarfing the case

in chief."  Blum v. Witco Chem. Corp., 829 F.2d 367, 377 (3d Cir. 1987)

(internal quotation marks and citation omitted.)  Thus, "[m]any fee

applications are decided on the basis of affidavits without the need for a

hearing."  Id.   A hearing is necessary "only where the court cannot fairly

decide disputed questions of fact" without one.  Id.

In support of the position that a hearing is required, the plaintiff

cites to a Third Circuit case that held that failure to hold an evidentiary

hearing on an attorney's fee petition is reversible error. See Smith v. Phila.

Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997).  The case that plaintiff

relies upon, Smith, however, was decided after the case that defendant

---

[3]We note that it appears the docket report in this case does not
reveal any request by the plaintiffs for a hearing on this matter before the
magistrate judge ruled.  Rather, plaintiff raises the issue of the necessity of
a hearing for the first time in their objections to the R&R.  While it is true
that we provide a *de novo* review of the issues to which objections are
lodged, it is most helpful for the parties to raise all of their issues before the
magistrate judge.

relies upon, Blum.  Where a conflict exists between two cases decided by different panels of the Court of Appeals, the oldest decision prevails.  Ryan v. Johnson, 115 F.3d 193, 199 (3d Cir. 1997) (citing Third Circuit Internal Operating Procedure 9.1)).  Here, therefore, Blum prevails, and the failure to hold an evidentiary hearing is not necessarily reversible error.   Rather, we must determine whether or not we can fairly decide disputed questions of fact, that is the appropriate amount of the hourly wage, without a hearing.   See, e.g., Drelles v. Met. Life Ins. Co., 90 F. App'x 587, 591 (3d Cir. 2004) (explaining that the "failure to hold a hearing is not automatically reversible error, but rather must be evaluated under Blum.").

In the instant case, we find that a hearing is not necessary to fairly decide disputed questions of fact.  Both parties have submitted attorney affidavits from which we can determine a reasonable hourly rate based upon the prevailing market rates in the relevant community.  See, e.g., Holzhauer v. Hayt, Hayt & Landau, LLC, Civ. A. No. 11-2336, 2012 WL 3286059, at *3, n.3 (D.N.J. Aug. 10, 2012) (explaining that a hearing is unnecessary to determine the reasonableness of attorney's fees where the court can make that decision based upon the information on the record).

10

Accordingly, we will overrule plaintiff's objection regarding the necessity of a hearing the determine the appropriate hourly rate to be applied to the various attorneys.

### B. Appropriate Hourly Rate

Having determined that the court does not need to hold a hearing, we turn to the issue of an appropriate hourly rate.  This litigation commenced in Scranton, Pennsylvania, in the United States District Court for the Middle District of Pennsylvania.  The plaintiff's attorneys who now seek their fees, however, are not from Scranton/Wilkes-Barre, but are from Philadelphia and Pittsburgh.  Defendant asserts that the court should determine the hourly rate based upon the prevailing rate in the forum of the litigation, that is, Scranton/Wilkes-Barre in the Middle District of Pennsylvania.  Plaintiff argues that the hourly rate should be based on the prevailing hourly rate in the area in which the attorneys practice law, Pittsburgh, the Western District of Pennsylvania and Philadelphia, the Eastern District of Pennsylvania.

The law provides that generally the "relevant rate is the prevailing rate in the forum of the litigation."  Interfaith Comm. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005).  This rule is known as the "forum

rate rule," and two exceptions to the rule exist.  The exceptions are "first,

when the need for the special expertise of counsel from a distant district is

shown; and second, when local counsel are unwilling to handle the case."

Id. (internal quotation marks and citation omitted).

Here, the magistrate judge found that plaintiff had not established

either exception and thus she recommends the application of the forum

rate rule.  The plaintiff objects to the magistrate judge's recommendation.

We agree with the magistrate judge.

The sole evidence that plaintiff presents on this point is the

declaration of Attorney Barry Dyller who opines that there is a lack "of

highly skilled civil rights litigators in the Middle District of Pennsylvania."

(Doc. 84-1, at ¶ 6).  To counter this evidence, the defendant presents the

affidavit of local civil rights attorney Robin B. Snyder who indicates that

lawyers in the Scranton/Wilkes-Barre legal community could have, in fact,

adequately represented plaintiff in this matter.  (Doc. 90-2, ¶ 6).  Plaintiff

does not establish otherwise.  At best, plaintiff may have established a lack

of qualified civil rights litigators in the appropriate forum.[4]  She did not

---

[4]The plaintiffs argue that a hearing should have been held to the
extent that Snyder's affidavit contradicted Dyller's affidavit.  A simple
reading of the plain language of the affidavits, however, indicates that they
are not contradictory.  Snyder indicates that local attorneys could have in

establish that special expertise was necessary for the case or that local counsel were unwilling to take the case.  One of these facts must be established to apply one of the exceptions to the forum rate rule.

The plaintiff presents only one main legal argument which she evidently seeks to apply to both exceptions to the forum rate rule.  Plaintiff argues that the "Magistrate Judge, however, imposed a bright-line rule requiring plaintiffs who engage out-of-forum counsel to prove that they conducted a search for local counsel in order to be entitled to out-of-forum rates, regardless of whether it is clear at the outset that such a search would be futile."  (Doc. 98, Pl's Obj. at 11).   We disagree.

First, plaintiff's argument is based on the premise that a search for local counsel would have been futile.  This contention is not supported by the record.  Such unsupported assertions render her argument unconvincing.  The court cannot assume that because there is a "lack of civil rights" attorneys that a search for one would be futile.  Absolutely no evidence in the records supports plaintiff's assertion.

Second, the magistrate judge did not impose a bright-line rule, rather,

---

fact adequately represented plaintiffs.  Dyller states that there is a lack of highly skilled civil rights litigators.  He does not state that there is an absence of such litigators.

she indicated that in the absence of other evidence, a "shortage of qualified civil rights" litigators is insufficient to meet plaintiff's burden.  Such a conclusion is self-evident despite plaintiff's arguments which appear to misinterpret the evidence of record.

In support of her position, plaintiff cites to the Ninth Circuit Court of Appeals case of <u>Gates v. Duekmejian</u>, 987 F.2d 1392 (9th Cir. 1992).  The award of out-of-forum rates was affirmed in this case where the plaintiffs "offered numerous declarations of San Francisco and Sacramento attorneys which directly support their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle this type of complex institutional reform litigation were unavailable."  <u>Id.</u> at 1405.  The holding of this case is inapplicable to the instant case.  In <u>Gates</u> the evidence established that appropriate representation was **unavailable** in the forum.  The evidence in the instant case does not establish that appropriate representation was unavailable in the forum.

In addition to the her main legal argument plaintiff also raises a factual argument.  Plaintiff argues that factually most of the attorney's fees in this case were generated for work in the Third Circuit, located in Philadelphia, Pennsylvania and that regardless of the rate paid for work at

the trial court level, the Pittsburgh and Philadelphia market rates should be applicable to the appeals court.  Plaintiff's argument is not convincing.  If she had hired local counsel to handle the case, no evidence suggests that the counsel's fees would have risen to the rate charged by Philadelphia or Pittsburgh lawyers merely because an appeal was taken which was heard in a courthouse in a larger, more expensive, legal market.[5]  Regardless, no trials or evidentiary hearings were ever held in the appellate court in Philadelphia.

A review of the electronic docket sheet for the appeal of this case reveals that only two substantial proceedings were held in Philadelphia. Both proceedings were oral arguments, which could have been prepared for in the Scranton/Wilkes-Barre area as well as in the Philadelphia area. Regardless of where the appeal was heard, the forum where the actions took place of which plaintiff complained remains within the Middle District of Pennsylvania.  The witnesses and other evidence were located within the Middle District.   Adjusting the rate for work on the appeals is thus

---

[5]In support of this contention plaintiffs cite to the case of Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994).  We note that because we sit within the Third Circuit Court of Appeals, we are not bound by decisions of the Fourth Circuit Court of Appeals.  To the extent that our decision is different from that in Rum Creek, we respectfully disagree with that decision.

completely unwarranted.

Therefore, we find that the magistrate judge appropriately concluded that the plaintiff failed to establish either exception and properly applied the general rule, that is the forum rate rule.

Having decided that the appropriate rate is that of the forum, we must next determine what the prevailing attorney rate is in the Scranton/Wilkes-Barre Market.  Plaintiff seeks $500.00 for Attorney Walczak, $400.00 for Attorney Roper and $325.00 for Attorney Rose.  (Doc. 84).

"The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community.  The prevailing party bears the burden of establishing by way of satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates meet this standard." Washington v. Phila. Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (internal quotation marks and citations omitted).

Plaintiff has not met this burden particularly with Attorney Walczak's requested rate of $500.00 per hour and Attorney Roper's requested rate of $400.00 per hour.  To support the requested rate, the plaintiff presents the declarations of the attorneys at issue and the declaration of Attorney Barry

Dyller, an experienced civil rights litigator who practices primarily in the Middle District of Pennsylvania. (Doc. 84-1, Dyller Decl.).

In his declaration, Dyller merely states that the requested rates are "reasonable."  He further states that Roper's requested rate is "in line" with his normal hourly rate. (Id. ¶¶ 5, 6).  Reasonableness, however, is not the standard.  The standard is the **prevailing market rate** in the community.

Finally, the Dyller declaration proceeds to state that the $325.00 per hour requested by Attorney Rose is "in line with the rates charged and paid for attorneys of comparable experience in similarly sophisticated litigation in the Middle District."  (Id. ¶ 7).  This assertion by Attorney Dyller is closer to the applicable standard.

To counter the Dyller declaration, defendant submitted the affidavits of Robin Snyder, an experienced civil rights attorney and the managing attorney of the Scranton, Pennsylvania office of Marshall, Dennehey, Warner, Coleman & Goggin.  (Doc. 90-2).  She indicates that the "typical/standard rate" charged by plaintiff civil rights lawyers in the Scranton legal market is as follows: 1) Attorneys with twenty-five (25) years experience, $250.00 per hour; 2) Attorneys with ten (10) years experience is $200.00 per hour and 3) attorneys with one to five (1-5) years

experience is $125.00.   (Id. ¶¶ 8-10).  To further establish the prevailing

market rate, defendant also provides the affidavit of Attorney Kimberly

Borland, a civil rights, employment law attorney in the Middle District of

Pennsylvania who indicates that he would bill at a rate of $250.00 per hour

and $300.00 per hour for trial.  (Doc. 90-1).[6]

Plaintiff's counsel argues that defendant has not provided evidence

_____

[6]Plaintiff complains that "[t]he only record evidence cited by the
Magistrate Judge for reducing the requested rates are the affidavits
submitted by defendant in a sur-reply, to which plaintiffs had no opportunity
to respond."  (Doc. 98, Pls.' Objs. at 8).  This complaint is not well founded.
The defendant's sur-reply was a response to the reply brief filed by
the plaintiff where she submitted the Dyller declaration for **the first time**.
Additionally, defendant filed a motion to file the sur-reply brief, that the
court granted.  Plaintiff did not object to the motion to file a sur-reply brief.
Indeed, in the petition for attorney's fees, plaintiff indicated that she had
not provided supporting affidavits from community lawyers, and requested
the opportunity to submit the affidavits to support the rates that defendant
"may contest."  (Doc. 77, Pet. for Atty's Fees, ¶ 37).  Further, plaintiff
indicated that she would "of course . . . not object to Defendants having the
opportunity to respond thereto[.]."  (Id. ).  Plaintiff filed the
affidavit/declaration with their reply brief.  Defendant's response to the
reply brief was the sur-reply brief.  Despite the assurance from plaintiff that
she would not object to a response to her evidence, she now complains
that she did not have an opportunity to respond.   Additionally, the record
reveals no request by the plaintiff to respond to the sur-reply brief.
Accordingly, we find no error in the magistrate judge relying on a sur-reply
brief that defendant anticipated and did not object to–a sur-reply that was
responding to evidence presented in defendant's reply.  The plaintiff was
not denied an opportunity to respond to the sur-reply.  Indeed, plaintiff
never sought such an opportunity.

18

of a "reasonable market rate."  We disagree.  As set forth above, it was

actually the defendant, not the plaintiff, which provided evidence that was

most relevant to the standard.   The Snyder affidavit indicates the

"typical/standard rate" charged by plaintiff civil rights lawyers in the

Scranton legal market.  The Borland affidavit further substantiates this

claim by revealing how much he, an experienced litigator in the relevant

forum, charges.[7]

Based upon these affidavits, Magistrate Judge Mehalchick concluded

that defendant had rebutted the reasonableness of the plaintiff's requested

attorney's fees rates.  However, based upon the plaintiff's attorneys'

---

[7]Plaintiff argues that we should not credit Attorney Snyder's affidavit
because she has a conflict of interest in that she works to defend
government entities in civil rights cases.  As such, she has an interest in
keeping the community market rate for plaintiffs' counsel in civil rights
cases as low as possible.  This argument is not convincing.  Snyder's
approximation of the fees charged is in line with Borland's fees, and he
represents plaintiffs in civil rights cases.  Moreover, the same argument
could be applied to the evidence that plaintiff has presented.  As a
plaintiff's civil rights attorney, Attorney Dyller, would have an interest in
keeping the community market rate for plaintiff's counsel in civil rights
cases as high as possible.  Plaintiffs, however, do not object the Dyller's
affidavit, in fact, they present it as evidence and rely upon it to justify their
request for up to $500.00 an hour in attorney's fees.  The Snyder affidavit
together with the Borland affidavit provides convincing evidence of the
prevailing hourly rate for civil rights attorneys in the Scranton/Wilkes-Barre
market.

extensive experience in civil rights litigation, and the complexity of the

instant matter, the Magistrate Judge generously recommended an hourly

rate of $300.00 for both Attorneys Roper and Walczak.  See, e.g., Shaw v.

Cumberland Truck Equip. Co., No. 1:09cv3598, 2012 WL 1130605, at *3

(M.D. Pa. Mar. 30, 2012) (concluding that attorney fee rates for seasoned

plaintiff's attorney's in the Middle District of Pennsylvania range from

$200.00 to $300.00 per hour).

We will adopt the R&R on the matter of the attorney's hourly rates.

This rate is supported by the evidence submitted by the defendant, and the

plaintiff's attorneys certainly do have extensive experience in the civil rights

field.[8]  Accordingly, plaintiff's objection to the attorney fee rate will be

overruled.  We will adopt the following rates suggested by the Magistrate

Judge:  $300.00 for both Roper and Walczak and $250.00 for Rose.

---

[8]It could be argued that this matter was not so complex as to justify
an increase of the hourly rate to $300.00. The facts of the matter were
extremely simple and the proceedings were not overly complicated.  This
case is not an antitrust case or a complex civil rights action involving many
plaintiffs and institutional discrimination.
    The only potentially "complex" area would be the state of the law on
the issue.  The law, however, was not so confusing, or technical, or
procedurally confounding that it required more than a typical competent
lawyer to analyze it.  Nonetheless, as set forth above, we will adopt the
magistrate judge's recommended hourly rates.

In conclusion, the plaintiff's objections to the R&R will be overruled. No reason exists for a hearing on this matter, and we will adopt the hourly rates suggested by the magistrate judge.

## II.  Defendant's objections

Having dealt with the plaintiff's objections to the R&R, we turn our attention to the defendant's objections.  Defendant raises several objections including the following: A) the excessiveness of the time spent "reviewing pleadings"; B) the excessiveness of time for conducting research; C) the excessiveness of hours spent working on the appeal; D) the excessiveness of hours for drafting the petition for a rehearing; E) the failure to adjust the lodestar for unsuccessful claims; and F) the propriety of awarding the electronic research costs.  We will address these issues in *seriatim*.

## A.  Time spent reviewing pleadings

Defendant's first four objections relate to allegations of excessive hours claim by the plaintiff's counsel in their fee petition.  As noted above, the starting point in calculating an attorney's fee award is to determine the hourly rate and multiply it by the number of hours reasonably expended on the litigation.  The party seeking the attorney's fees has to burden to

establish that the requested fee is reasonable.  Rode, 892 F.2d at 1183.

With regard to the hours expended on the litigation, "[t]he district court

should exclude hours that are excessive, redundant, or otherwise

unnecessary."  Id.   In short, a prevailing party should not be awarded fees

that are "excessive, redundant, or otherwise unnecessary."   Pub. Int.

Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

The R&R indicates that it was reasonable for the various attorneys

for the plaintiffs' to spend a total of 28.15 hours "reviewing" the pleadings -

pleadings that it took plaintiff's counsel only 17.5 hours to draft.  The

defendant argues that 28.15 hours is not reasonable to review pleadings

that have already been drafted and filed with the court.

The magistrate judge allowed the time in the lodestar calculation

because "it is reasonable for new counsel to spend time reviewing

pleadings in a case, and particularly since those time entries to which

Defendant objected also include time for other tasks such [as] an internal

conference and researching similar cases[.]" (Doc. 92, R&R at 27).   We

agree with this reasoning of the Magistrate Judge and will deny this

objection.

### B.  Time spent conducting research

The plaintiff's attorney's fee petition indicated that 95.34 hours were spent on research in this matter.  The magistrate judge found this amount was reasonable, except for 1.4 hours of 2.4 billed for researching appellate oral argument procedures.   The defendant objects to the R&R on the basis that plaintiff's counsel addressed the issues involved in this case in other cases that it has prosecuted for over ten years.  Thus, the amount of time spent researching the same limited caselaw over and over is, according to the defendant, excessive, redundant and unnecessary work. After a careful review, we agree with the magistrate judge's recommendation.

In the instant case, as pointed out by plaintiff's counsel, the research was important to follow recent developments in the law of which there were many during the approximately four years that this case was being litigated.  And although plaintiff's counsel is an expert in the field, with many years of experience on this issue, there was still a necessity to remain current on the developing law.  Accordingly, we will adopt the R&R with regard to the time spent conducting research.

### C.  Time spent on the appeal

The R&R also recommends that approximately 370 hours for preparing and drafting two appellate briefs be allowed as a portion of the attorney's fees.[9]  (Doc. 92, R&R at 32-33).   Defendant points out that it billed only 60.1 hours for briefing the appeal.  Thus, plaintiff's counsel, with 97 combined years of experience and much experience litigating the same issue should not have reasonably spent nearly six times that amount of time on its briefs.  We will adopt the R&R on this point.

As the R&R notes, the time "identified by Defendant includes not only the time spent drafting Plaintiff's appellate brief and reply, but also time spent preparing and attending oral argument, several meetings discussing case strategy, filing two motions for extension of time, coordinating the preparation of a joint appendix, and replying to the Defendant's brief in opposition."  (Id. at 32).  Thus, comparing this time with the amount of time defendant spent on the briefing does not provide a reasonable basis for finding that the hours requested are excessive.  We will, therefore, adopt the R&R on this issue.

---

[9]The plaintiff requested 374.07 of which all but 4.3 hours was approved.  Plaintiff agreed to a 3.5 hour reduction and the Magistrate Judge suggested an additional .8 hour reduction.

24

### D.  Time spent drafting the petition for a rehearing

The R&R suggests that it was reasonable for Attorney Walczak to spend 68.02 hours drafting a petition for rehearing before the Third Circuit Court of Appeals.  Defendant objects to this amount of time, and suggests that anything over 30 hours is excessive.  After a careful review, we agree with the defendant.

The plaintiff argues that the defendant's objections lacks specificity. The objection, however, is very specific.  Defendant notes the petition that plaintiff drafted was only fifteen (15) pages long.  It contained two main reasons as to why the entire Third Circuit Court of Appeals should reconsider the underlying opinion.  Principally, it reiterated points of law already made by the plaintiff in the summary judgment brief and appellate brief.  Given Walczak's extensive experience in First Amendment issues and on these issues in particular, to spend more than one and a half work weeks on a petition for rehearing is excessive.   We will thus grant the objection and reduce the hours for drafting the petition to 30.

We are now at a point where we can calculate the lodestar figure. The figure that the magistrate judge arrived at was $278,092.75.  (Doc. 92, R&R at 39).  The only difference in our calculation is a reduction of 38.02

25

hours from Attorney Walczak's amount.  The Magistrate Judge calculated

195.99 hours for Walczak and a lodestar for Walczak of $58,797.00.

When the 38.02 hour reduction is made, his "Allowed Hours" total 157.97

when this is multiplied by an hourly rate of $300.00 Walczak's lodestar

comes to $47,391.00.  This is a difference of $11,406.00.  We will thus

deduct $11,406 from the lodestar calculated by the Magistrate Judge

($278,092.75) and thus we arrive at our lodestar of $266,686.75.

### E.  Adjusting the lodestar for unsuccessful claims

The Magistrate Judge calculated a lodestar figure after exhaustively

examining the hours worked and determining the reasonable attorney rate.

After making a slight reduction, we have reached a lodestar amount of

$266,686.75.

After calculating a lodestar figure, the court can adjust the total

downward if it is "not reasonable in light of the results obtained."  Rode,

892 F.2d at 1183.  "This general reduction accounts for time spent litigating

wholly or partially unsuccessful claims that are related to the litigation of

successful claims."  Id.   The defendant argues that plaintiff's pursued

three claims and prevailed on only one of them. Thus, the lodestar should

be reduced to reflect the fact that plaintiff failed to prevail on two of the

26

claims.  After a careful review, we agree in part with the defendant.

As stated above, the plaintiff's complaint contained the following causes of action:   Count I -  First Amendment precluded the school district from disciplining a student for the profile which is non-threatening, non-obscene and a parody; Count II - the First Amendment prohibited the school district's overly broad and vague policies;  Count III -  the School District acted beyond its statutory authority in punishing the plaintiff for out-of-school speech; and Count IV - the school district violated the parents' Fourteenth Amendment rights to determine how best to raise, nurture, discipline and educate their children.

The Court of Appeals ultimately ruled in plaintiff's favor with regard to the school district impermissibly impinging the student's free speech rights. The court also found, however, that the school district policy was not overbroad, (Count II), J.S. ex rel. Snyder v. Blue Mtn. Sch. Dist., 650 F.3d 915, 935 (3d Cir. 2011) and that the parents' Fourteenth Amendment rights (Count IV) were not violated. Id. at 933-34.  Thus, on two of the four counts, the plaintiff was not the prevailing party.

Defendant argues that we should reduce the amount of the fees to reflect plaintiffs' partial success.  According to the defendant the lodestar

27

should be adjusted downward by at least fifty percent (50%) to reflect properly plaintiffs' limited success.

The R&R recommends not reducing the amount.  The magistrate judge reasoned that each of the claims were based on the same alleged discriminatory conduct - that is, different grounds to reach the same result, an acknowledgment that the school violated Plaintiff J.S.'s freedom of speech.  (Doc. 92, R&R at 40).  After a careful review, we disagree and find that a reduction of the lodestar is appropriate.  A review of the claims indicates that three of the counts were more or less directly related to the freedom of speech claim, the third, however, Count IV, involving parental rights was not.

The United State Supreme Court clarified the proper relationship of the results obtained to an award of attorney's fees in Hensley v. Eckerhart, 461 US. 424 (1983).  The Court explained that "[t]he product of reasonable hours times a reasonable rate does not end the [attorney's fee] inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. at 434.  The Court framed the issue it was addressing as follows: "[Whether a partially prevailing plaintiff may recover an attorney's

fee for legal services on unsuccessful claims." Id. at 426.  The Court

answered the issue with a resounding "maybe."

More particularly, the Court explained its holding as follows:

> We hold that the extent of a plaintiff's success is a
> crucial factor in determining the proper amount of
> an award of attorney's fees under 42 U.S.C. §
> 1988.  Where the plaintiff has failed to prevail on a
> claim that is distinct in all respects from his
> successful claims, the hours spent on the
> unsuccessful claim should be excluded in
> considering the amount of a reasonable fee.  Where
> a lawsuit consists of related claims, a plaintiff who
> has won substantial relief should not have his
> attorney's fee reduced simply because the district
> court did not adopt each contention raised.  But
> where the plaintiff achieved only limited success,
> the district court should award only that amount of
> fees that is reasonable in relation to the results
> obtained.

Id. at 440.

Thus, the Supreme Court pointed out three possible scenarios in an

attorney's fees case under section 1988 where the plaintiff did not achieve

complete success.  These scenarios are: 1) where plaintiff failed to prevail

on a claim that is distinct in all respects from his successful claims; 2)

where a lawsuit consists of related claims and the plaintiff won substantial

relief, but the court did not adopt each and every contention raised by the

plaintiff; and 3) where a lawsuit consists of related claims and the plaintiff

achieved only limited success.

Our first task then is to determine into which scenario the instant case falls.  Defendant argues that a considerable amount of time was spent researching, briefing and arguing claims on which the plaintiffs did not prevail.  Included are the parental rights claims of Terry and Steven Snyder, J.S.'s parents, which required the taking of their depositions solely for their claim.  It also includes the claims against Joyce Romberger and James McGonigle in their individual capacities - plaintiffs stipulated to their dismissal after the defendant filed its motion for summary judgment. Additionally, plaintiff did not prevail on the claim that the district's policies and rules were unconstitutional on their face.

Plaintiff's counsel disagree with the defendant and assert that they achieved an excellent result.  They argue that "J.S.'s primary objective was to obtain injunctive relief prohibiting the District from punishing her for her off-campus expressive active, and she ultimately achieved that objective." (Doc. 100, Pls.' Opp'n. Br. at 9).  She further got the suspension expunged from her school records.  She also indicates that she "achieved her goal of establishing that school districts do not have the authority to punish out-of-school speech by students when that speech does not disrupt school."

(Id.)  Plaintiffs argue that J.S. achieved all the relief that she sought.

We find the plaintiffs' argument convincing to the extent that it discusses J.S.'s claims.  It does not, however, discuss the separate claims of J.S.'s parents.  In other words, J.S. may in fact have achieved all the relief she sought, her parents however, who were named as individual plaintiffs, did not receive the relief they sought.  The complaint seeks a declaration that "the Defendants' disciplinary action against [J.S.] . . . violates the Snyders' parental rights under the Fourteenth Amendment to the United States Constitution[.]" (Doc. 1, Compl. Prayer for Relief, ¶ (b)). The Third Circuit found no merit to the plaintiffs' claims involving parental rights under the Fourteenth Amendment.  J.S. ex rel. Snyder, 650 F.3d at 934.  Thus, J.S.'s parents were not prevailing parties on their individual claim and are not entitled to attorney's fees.  In fact, the instant fee petition is filed in the name of J.S. alone, not on behalf of her parents.  Thus, it would be inappropriate to award a fee for the work performed on the parents' cause of action.

In support of their position, the plaintiffs rely upon Tenafly Eruv Ass'n v. Boro. of Tenafly, 195 F. App'x 93 (3d Cir. 2006).  We are unconvinced that Tenafly is applicable to the instant case.  Besides being an

31

unreported, non-precedential case, <u>Tenafly</u> is also factually different.  In

<u>Tenafly</u>, the court held that although plaintiff prevailed on only one claim, a

full attorney's fee was warranted.  The court reached this conclusion

because all three of plaintiff's claims were based on a common core of

facts and arguments which were intertwined.  <u>Id.</u> at 96.  In that case, the

plaintiff argued that the actions of the defendant violated its rights under

the Free Speech and Free Exercise Clause of the First Amendment to the

United States Constitution and a violation of the Fair Housing Act.  <u>Id.</u>  The

same facts supported each cause of action.

In the instant case, the Plaintiff J.S.'s parents could have asserted

the claim that the school interfered with their parental rights, without

entering the factual evidence regarding the other claims.  The parents

could have asserted the claim they did not prevail on without raising the

claim that J.S. did succeed on.  To decide the issue of parental rights, the

Third Circuit Court of Appeals did not have to analyze the First Amendment

issues and to decide the First Amendment issues, the court did not have to

analyze the parental rights issues.  Despite plaintiffs' arguments to the

contrary, the claims are in fact distinct, and it is appropriate to reduce the

attorney's fees award.

As the United States Supreme Court has explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. ... If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it is was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

Hensley, 461 US. At 435-36.

Here, plaintiffs only achieved limited success.  The background facts of the two claims, however, are intertwined, and there is no doubt that much of the discovery taken in the case applied to the both the successful claims and the unsuccessful claim.  Because the issues are intertwined, we find that an across the board decrease in the attorney's fees of ten percent (10%) is appropriate rather than engaging in the task of determining how many hours were spent on each distinct claim. Accordingly, we will subtract 10% from the lodestar to account for plaintiff's lack of success on the parental rights claim.  When we subtract 10% from our lodestar of  $266,686.75 we reach the amount $240,018.075, which

33

the court will round up to the nearest cent, $240,018.08.

The plaintiff  has also submitted a request for attorney's fees for work performed on the objections to the R&R.  Attorney Walczak seeks 1.6 hours and Attorney Rose seeks 22.2 hours.  (Doc. 98-1, Walczak Decl.; Doc. 100-1, Rose Decl.)  These hours will be approved and this time will be awarded based upon the hourly rates set forth above, $300.00 per hour for Walczak and $250.00 an hour for Rose.  Totals for working on the objections are therefore, $480.00 more for Walczak and $5,550.00 for Rose.  The total attorney's fee for the objections is therefore $6,030.00. When added to the total from above, it equals a grand total of $246,048.08 for attorney's fees.  An appropriate order follows.

### F.  Electronic research costs

The Magistrate Judge awarded to plaintiffs, as part of the costs of suit, approximately $25,000.00 for electronic research.  The defendant objects to this award.  Defendant agrees that generally electronic research costs are recoverable.  It objects here, however, because the plaintiff's counsel did not itemize their research in the fee petition.  They merely presented bottom line costs for both Lexis and Westlaw research.  Some of the time research, however, was aimed at the unsuccessful claims.

34

Therefore, according to the defendant the costs should be reduced to reflect the plaintiffs' limited success.

We agree with the defendant.  In the previous section we determined that a decrease in attorney's fees of ten percent (10%) is appropriate to account for the lack of success on the parents' claim.  We will likewise make a ten percent (10%) reduction in the electronic research costs to account for the parental rights count.

The total requested by the plaintiff for electronic research is $25,237.81 ten percent of which is $2,523.78.  We will thus decrease the total costs recommended by the R&R by $2,523.78.  The R&R recommends $31,926.61 which when $2,523.78 is subtracted results in a total cost award of $29,402.83.

**Conclusion**

For the reasons set forth above, the plaintiff's objections to the R&R will be overruled and the defendant's will be overruled in part and sustained in part.  We will overrule all of defendant's objections, except the objection regarding decreasing the attorney's fee award for claims that plaintiffs did not prevail on.   A decrease of ten percent (10%) will be applied to the attorney's fee to account for the claims that plaintiffs did not

prevail on.  The attorney's fee awarded will be $246,048.08.  We will also reduce the electronic research costs by ten percent (10%) to account for the unsuccessful claim.  Thus, the costs will be $29,402.83 in costs as set forth above.  An appropriate order follows.


**Date: March 31, 2013**                    **s/ James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**